**Elwood ERICKSON, Plaintiff and Appellant,**

v.

**Emilyn Jane ERICKSON, Defendant and Appellee.**

**Civ. No. 10942.**

Supreme Court of North Dakota.

March 19, 1986.

Fleming & DuBois, Cavalier, for plaintiff and appellant; argued by Neil W. Fleming.

Hamilton & Flaten, Grand Forks, for defendant and appellee; argued by R. Lee Hamilton.

ERICKSTAD, Chief Justice.

Elwood Erickson has filed an appeal from a judgment of divorce entered by the District Court of Grand Forks County. On appeal, Elwood has raised, in essence, the following two issues:

(1) Whether or not the trial court's property division is clearly erroneous; and

(2) Whether or not the trial court was biased against Elwood thereby denying him a fair and impartial trial.

Elwood and Emilyn were married for approximately 36 years, and they have seven children as a result of their marriage. During the marriage they lived and worked together on a family farm, and, in addition to farming, Elwood spent a number of years raising and racing thoroughbred horses. At the time of the divorce proceedings, Elwood was 59 years old and in good health, but Emilyn, age 56, suffered from arthritis and high blood pressure and was generally not in good health.

At the time of the proceedings, the parties owned three parcels of farm property totaling 338.3 acres encumbered by mortgages totaling approximately $157,000 in principal and accrued interest. In addition, they owned an unencumbered two-thirds undivided interest in 147 acres of farmland with an option to purchase the remaining one-third interest from Elwood's sister.

The trial court awarded to Elwood the unencumbered two-thirds undivided inter-

est in the 147-acre property, the thoroughbred horses and equipment, his personal effects, and "all unaccounted for income and funds" received by Elwood during 1983 and 1984. In addition, the court gave Elwood an easement to use the farm buildings, residence and adjoining pastureland through 1986.

The trial court awarded Emilyn the remaining property consisting primarily of the 338.3 acres of farmland subject to the encumbrances, the farm machinery, all household goods, and her personal effects.

On appeal, the trial court's division of property will not be set aside by this Court unless it is clearly erroneous under Rule 52(a), N.D.R.Civ.P. A property division is not clearly erroneous unless this Court is left with a firm and definite conviction that a mistake has been made. *Blowers v. Blowers*, 377 N.W.2d 127 (N.D.1985); *Carr v. Carr*, 300 N.W.2d 40 (N.D.1980).

Elwood asserts that the property division is clearly erroneous. More specifically, Elwood asserts that the trial court erred in finding that Elwood had not made principal payments on any loans. We believe that Elwood has misconstrued the trial court's findings. The trial court determined only that no principal payments had been made on the five loans which were secured by mortgages on the parties' farmland. Although Elwood has referred this Court to exhibits showing that principal payments were made on certain loans, none of those exhibits shows any payment of principal on the loans referred to by the trial court as being secured by mortgages on the farmland. Consequently, we conclude that the trial court's findings in this regard are not clearly erroneous.

■ Elwood also asserts that the trial court did not give "proper consideration" to the fact that the farmland originated from Elwood's family. We disagree. The record supports the trial court's determination that most of the farmland was purchased by the parties from Elwood's family using resources acquired through Elwood and Emilyn's joint efforts. We do not believe that the trial court gave insufficient consideration to the origination of the farmland, especially in view of the fact that the property was acquired by purchase and not as a gift or inheritance.

Elwood also asserts that the trial court erred in its determination that Elwood's farming practices "have been poor" and that Elwood was not an industrious farmer. The testimony of several witnesses, including Elwood's own son, Ross, indicated that Elwood's management and operation of the farm has been unsatisfactory and has resulted in an unnecessary accumulation of indebtedness. We believe there is substantial evidence in the record to support the trial court's findings in this regard.

■ Elwood also asserts that the trial court, in dividing the property, placed undue emphasis on the fault of the parties. It is well settled that fault is a factor the court may consider when dividing property. *Rust v. Rust*, 321 N.W.2d 504 (N.D.1982); *Fischer v. Fischer*, 139 N.W.2d 845 (N.D. 1966). The trial court made a finding that Elwood "admitted having committed adultery with at least one other woman." It also found that Elwood "unjustly accused [Emilyn] of infidelity and was distrustful of her" and that such conduct "contributed to the destruction of the parties' marriage." There is evidence in the record to support the foregoing findings by the trial court. However, there is nothing in the record or the court's findings or conclusions to suggest that the court placed undue emphasis on the fault of the parties in making its distribution of property or that it failed to adequately consider other important factors.

■ Having reviewed the record in this case, we conclude that the trial court's property division was supported by evidence in the record and is not clearly erroneous.

■ Elwood also asserts that the trial court held a negative bias toward him which denied him a fair and impartial trial. In support of his contention, Elwood asserts that the trial court adopted Emilyn's

property valuation. The trial court is the judge of the credibility of the parties and the evidence they introduce, and it was within the court's discretion to utilize, as it did, Emilyn's property valuations which the court found to be more credible.

■ Elwood also asserts that the trial court displayed bias against him by not allowing him to testify regarding Emilyn's alleged infidelity. A fair interpretation of the colloquy between the court and counsel during Elwood's direct examination in this regard is that the court would not allow Elwood to testify as to mere "suspicions" or with "hearsay" statements made by others. However, the court did allow Elwood to testify regarding his "observations" of Emilyn's alleged infidelity. We agree with the statement of Elwood's counsel in his appellate brief, especially regarding this line of testimony, that "the transcript is muddled and difficult to follow at best." It would have been advisable for the trial court to have allowed an offer of proof on these matters by Elwood's counsel, free of unnecessary objections by opposing counsel or colloquy between the court and counsel. We do not believe, however, that the court's rulings during this line of questioning demonstrate adverse bias toward Elwood.

The trial court is allowed great latitude in conducting a trial and, absent an abuse of discretion, its conduct of the trial will not constitute grounds for reversal. *Weisenberger v. Senger*, 381 N.W.2d 187 (N.D. 1986); *Williams County Social Services Bd. v. Falcon*, 367 N.W.2d 170 (N.D.1985); *Haugen v. Mid-State Aviation, Inc.*, 144 N.W.2d 692 (N.D.1966). We conclude that the trial court did not abuse its discretion in conducting the proceedings in this case. We further conclude that the trial court did not exhibit bias or other irregularities in its conduct of the proceedings so as to deny Elwood a fair and impartial trial.

■ Emilyn has requested this Court to award damages and attorney fees to her under Rule 38 of the North Dakota Rules of Appellate Procedure on the ground that Elwood's appeal is frivolous. We do not believe the issues raised by Elwood on this appeal were so nonmeritorious or frivolous as to warrant an award of damages or attorney fees or costs under Rule 38, N.D. R.App.P. Although an award of attorney fees may be granted under appropriate circumstances pursuant to Section 14–05–23, N.D.C.C., Emilyn has neither requested nor demonstrated grounds for an award of fees under that provision.

In accordance with this opinion, the judgment is affirmed with costs on appeal, not including attorney fees, awarded to Emilyn.

GIERKE, VANDE WALLE and MESCHKE, JJ., concur.

LEVINE, Justice (specially concurring).

I agree with the result and the major part of the opinion authored by the Chief Justice but write separately to express my views on the issue of fault in the context of an equitable property division.

The trial court found not only marital misconduct, that is, adultery, but also financial mismanagement of the marital assets, squandering of those assets and serious endangerment to the continued ownership of the remaining assets—all by the appellant. The trial court characterized the appellant's financial misconduct by stating that he "unnecessarily and grievously diminished the holdings of the parties and has placed them in jeopardy of further loss through dissipation and foreclosure." It is this kind of financial misconduct, rather than moral or marital misconduct, that is relevant. Fault is an appropriate consideration only insofar as it can be shown to have substantially affected the economic status of the parties. Marital misconduct which is not significantly related to the economic condition of the marriage is not germane to a division of property and should not be considered. *Smith v. Smith*, 331 S.E.2d 682 (N.C.1985); *see also* O'Kelly, Entitlement to Spousal Support After Divorce, 61 N.D.L.Rev. 225, 257 (1985). So, a compulsive gambler, unarrested alcoholic, or economic reprobate may be award-

ed a lesser division of property if it is shown that there was substantial dissipation or waste of assets by virtue of that party's conduct. *See Anstutz v. Anstutz,* 331 N.W.2d 844 (Wis.Ct.App.1983).

As far as I am concerned, the adulterer will reap retribution in a different arena. I believe this Court shares the enlightened view of the marriage relationship—that marriage is a partnership enterprise, a joint venture, to which each party contributes his and her efforts and skills, as agreed upon, either or both within or without the home. *See Briese v. Briese,* 325 N.W.2d 245 (N.D.1982). Upon dissolution therefore, the accumulated property should be distributed on the basis of the contributions to the partnership that entitle each party to a fair share of the property. *See Smith v. Smith, supra; Blickstein v. Blickstein,* 99 A.D.2d 287, 472 N.Y.S.2d 110 (1984); *Hinton v. Hinton,* 70 N.C.App. 665, 321 S.E.2d 161 (1984). This view of marriage makes noneconomic fault irrelevant to fair division based on joint efforts.

The *Ruff-Fischer* guidelines are consistent with this analysis. Insofar as one of those guidelines is the conduct of the parties, it should be interpreted to mean, for purposes of property distribution, the conduct of the parties that led to destruction, squandering or waste of assets.

In this case, the trial court's finding of economic fault was not clearly erroneous, although its finding of marital misconduct was irrelevant, in my view. I do not believe that the latter finding justifies reversal under the circumstances of this case.

I add that while I am troubled by the appellant's claim of bias, I conclude that the appellant made what amounts to a broadside attack on the alleged lack of impartiality of the trial judge, without enumerating or articulating in reasonably orderly fashion the evidence to support this claim. We are not a "de novo court" and we should not be expected to search the record for error. *Cf., Umpleby By and Through Umpleby v. State,* 347 N.W.2d 156 (N.D.1984). It is up to the litigants to point us in the right direction and provide us with facts and law sufficient to serve as our compass.

MESCHKE, J., concurs.