**Aleta Kaye VOLK, Plaintiff and Appellee,**

v.

**Pius VOLK, Defendant and Appellant.**

**Civ. No. 11228.**

Supreme Court of North Dakota.

April 16, 1987.

Zuger & Bucklin, Bismarck, for plaintiff and appellee; argued by Robert V. Bolinske.

Chapman & Chapman, Bismarck, for defendant and appellant; argued by Daniel J. Chapman.

GIERKE, Justice.

This is an appeal by Pius Volk (Pius) from a judgment entered in district court in which the court distributed one-half of the marital property and one-half of the marital debt to each party. This 50–50 split distribution follows our remand of the original judgment in which Pius was awarded sixty-nine percent (69%) of the marital estate and Aleta Volk (Aleta) was awarded thirty-one percent (31%). Pius contends that on remand the district court failed to follow the directive of this Court. We agree.

In the original judgment, the district court valued the Volks' marital estate at $834,817.00 and awarded Aleta $199,757.68 in property and cash, as well as $1,000 per month for ten years (present value $58,-453.20), for a total of slightly over $258,-000. *See, Volk v. Volk*, 376 N.W.2d 16, 17 (N.D.1985) (hereinafter referred to as *Volk I*.) Pius was awarded the remainder of the estate, some $576,000. *Volk I* at 17. Thus, the percentage split of the marital estate between the parties was sixty-nine percent (69%) to Pius and thirty-one percent (31%) to Aleta. *Volk I* at 17.

Contrary to what is asserted no fewer than five times in Justice Meschke's dissenting opinion, this Court did not in *Volk I* determine or state that the *Ruff-Fischer* guidelines "favor neither party." An accurate reading of the opinion in *Volk I* will

reveal that we determined that, *"most of the [Ruff-Fischer] guidelines would seem to favor neither party,"* (emphasis added), adding further that, "[i]t appears that the trial court's rationale is based primarily on the conduct of the parties during the marriage...." *Volk I* at 18.

■ By statute, the district court is required to make an "equitable" distribution of the real and personal property of the parties. Section 14–05–24, N.D.C.C. This distribution need not be equal to be equitable. *Anderson v. Anderson,* 390 N.W.2d 554, 556 (N.D.1986). When making this equitable distribution of the marital estate, the court is directed to consider a number of factors which have come to be known as the *Ruff-Fischer* guidelines.[1] The determination of what constitutes an equitable distribution lies within the discretion of the district court and is dependent upon the facts and circumstances of each case. *Nastrom v. Nastrom,* 284 N.W.2d 576, 580 (N.D.1979). However, when a substantial inequality in the property division exists, that disparity must be explained. *Anderson, supra.*

Accordingly, in *Volk I* the district court properly considered the conduct of the parties in making its distribution of the marital estate. Nevertheless, we remanded the matter for further proceedings, giving the district court the option to, "... either *make more specific findings of fact* in order to justify this disparity *or reexamine the distribution* as originally made." *Volk I* at 18. (Emphasis added). It does not appear that the district court on remand exercised either of these options.[2]

In the original marriage dissolution proceeding, the district court, in its discretion, determined that the facts and circumstances of this case were such that an equitable distribution of the Volks' marital estate was achieved by granting thirty-one percent (31%) of the property to Aleta and the remaining sixty-nine (69%) to Pius.

In support of its distribution, the trial court found that, "[n]early all of the property acquired during the marriage came as the result of Pius' work effort." In *Volk I,* we held that this rather general finding, combined with the evidence in the record of Aleta's contributions both at home and outside of the home, led us to the conclusion that the district court's findings of fact submitted for our review did not support the disparity in the original property award. Had the trial court's determination that "nearly all the property acquired during the marriage came as the result of Pius' work effort" been substantiated by more specific findings, the disparity in the division of the property might well have been appropriate.

It is important to note, especially in light of the trial court's response to our decision in *Volk I,* that this Court did *not* determine

---

1. As we have so often stated, the *Ruff-Fischer* guidelines direct the court to consider:
   (a) the respective ages of the parties;
   (b) the parties' earning abilities;
   (c) the duration of the marriage and conduct of each of the parties during the marriage;
   (d) the parties' station in life;
   (e) the circumstances and necessities of each of the parties;
   (f) the parties' health and physical condition;
   (g) the parties' financial circumstances as shown by the property owned at the time of the marital dissolution, its value, its income-producing capacity (if any), and whether it was accumulated before or after the marriage; and,
   (h) other material matters.
   *Ruff v. Ruff,* 78 N.D. 775, 784, 52 N.W.2d 107, 111 (1952), and *Fischer v. Fischer,* 139 N.W.2d 845, 852 (N.D.1966).

2. The district court's brief order simply stated:

"The Supreme Court having remanded my judgment in this case for reconsideration as to property division, and a hearing having been held on the matter, both parties and their counsel being present, it is now necessary for me to make a property settlement in keeping with the apparent intent of the Court. I find from my review of the Supreme Court's decision and the copies of the briefs of counsel that were filed with the appeal, that there are no further findings of fact that I can or wish to make that could reasonably be expected to persuade the Court that my initial decision is appropriate.

"Therefor [sic], I find that a fair and equitable division of the marital property of the parties as listed in Plaintiff's Post-Trial Property Inventory and Valuation Summary is that each party take one-half thereof along with one-half of any indebtedness existing against said property, neither party to have fees or costs."

that the trial court's findings in the original judgment were clearly erroneous. Had we taken this viewpoint, we could have ordered a redistribution of the marital property. We declined to do so even though it was strongly suggested in the dissent of Justice Levine. *See, Volk I* at 19 (Levine, J., concurring and dissenting).

Instead, we remanded the case with instructions that the district court make more specific findings of fact in support of the inequality presented by its distribution. *Volk I* at 18. Alternatively, if the district court could not justify the disparity in its division of the Volks' marital estate, we ordered further proceedings permitting the court to reexamine the distribution as originally made. *Volk I* at 18.

▬ Unfortunately, the district court apparently misinterpreted our directive. Without making any additional findings of fact and without further consideration of the *Ruff-Fischer* guidelines, the district court amended its property distribution from what it originally considered an equitable one (69% to Pius, 31% to Aleta) to an equal one. This resulted in a change in the amount of approximately $160,000.00 in the respective awards to each party. While we do not require that the *Ruff-Fischer* guidelines be specifically enumerated by the court to support its property distribution [*see, Routledge v. Routledge*, 377 N.W.2d 542, 545 n. 1 (N.D.1985)], certainly where there is such a great inconsistency between two separate property divisions in the same case, the district court should set forth some reasonable basis for its latter decision. *See,* Rule 52(a), N.D.R.Civ.P. ("In all actions tried upon the facts without a jury ... the court *shall find the facts specially* ... and direct the entry of the appropriate judgment; ...") (Emphasis added). In the instant case, it is inconsistent for the district court to inexplicably amend its distribution of the marital estate to one of equality when it had originally determined that a 69—31% split of the property was the equitable one.

We do not ordinarily act on division of property. *But see, Anderson v. Anderson,* 390 N.W.2d 554 (N.D.1986); *Weir v. Weir,* 374 N.W.2d 858 (N.D.1985); and *Sanford v. Sanford,* 301 N.W.2d 118 (N.D.1981). However, due to the length and nature of these proceedings and the need to bring an end to this litigation, in the interest of judicial economy we will redetermine the property division. Contrary to the assertion presented in the dissent, our redetermination of the Volks' marital property is no more new or novel than that performed by this Court in *Anderson, supra,* at 556.

▬ Based on our review of the entire record in this case under the provisions of the *Ruff-Fischer* guidelines, we find substantial evidence to support an unequal distribution of property. While many of the factors favor neither party, our determination of the distribution of the marital property turns upon the conduct of the parties during their marriage.

It is undisputed by the testimony of Pius, the Volks' two daughters, and by Aleta herself that the break-up of this marriage was caused by Aleta's desire to spend her time with non-family members. Aleta alleged that Pius cared only for money and did not want to participate in Aleta's social life outside of their home. Aleta left the Volk home in January 1982 and did not return. It is undisputed that Pius did not want to be divorced and even up to the time of the trial let it be known that he wanted to remain married to Aleta.

Similarly, both parties worked outside of the home throughout most of the marriage. We have recognized that a traditional homemaker's contributions arising from child care and home care are an asset to the enterprise of marriage and should be recognized in a property distribution upon dissolution of that marriage. *Briese v. Briese,* 325 N.W.2d 245, 247 (N.D.1982). However, in the instant case it appears that while Aleta worked throughout the marriage, Pius held down two full-time jobs for most of the marriage, as well as collecting $570.00 per month for an injury he received in the Korean War. Similarly, it is clear from the record that many of the "traditional" management responsibilities for the home and children were borne by Pius dur-

ing his marriage to Aleta. Pius performed many of the household chores throughout his marriage to Aleta, was a substantial caretaker of the parties' two children, and has been especially sensitive to the needs of the parties' epileptic daughter, providing her with a home and care. Contrast this conduct with that of Aleta who, according to the testimony of the Volks' other daughter, Peggy, charged her rent to live in their home upon graduation from high school.

The assets of the marriage were accumulated mostly through Pius' work ethic. While providing care for his home and children and holding down two jobs, Pius accumulated property and made investments increasing the value of the property manyfold. Pius worked full-time for Montana-Dakota Utilities, but also operated a farm and invested in land and condominiums, thereby increasing the assets of the marital estate while Aleta depleted the monies earned from her employment and money placed in a joint account by Pius for household use and family expenses. Aleta had a difficult time supporting herself, tended to overspend her income, and during the parties' separation required financial assistance from Pius to maintain her standard of living. Importantly, Aleta took no interest in the financial aspects of the marriage and the record reveals that she did not even know where many of the investment properties were located. We have approved a trial court's unequal distribution of the marital estate in part due to the financial mismanagement and dissipation of the property by that party. *See, Erickson v. Erickson,* 384 N.W.2d 659, 661 (N.D.1986); *also, Erickson, supra,* at 662–63 (Levine, J., specially concurring). It seems appropriate that a party such as Pius, who accumulated the majority of the marital assets through his extraordinary financial acumen, devotion to hard work and wise investments, should be rewarded by receiving a greater share of the marital property.

A second issue raised by Pius involves his assertion that the district court failed to separately distribute the Volks' marital property in accordance with the dictates of this Court's decision in *Graves*

*v. Graves,* 340 N.W.2d 903 (N.D.1983). Counsel for both Pius and Aleta concede that, due to the acrimony which exists between the parties, any agreement regarding the distribution of the marital property is impracticable. While marital property need not be partitioned or separately distributed to each party in every instance, in a divorce such as this, where a party has specifically requested that the property be separately distributed and there clearly exists ill-will between the parties involved that militates against cooperation in disposal of the marital estate, the trial court should partition and distribute the marital property separately to each spouse.

The Volks' marriage ended, for all intents and purposes, when Aleta grew tired of Pius' lifestyle and desired to live life at a faster pace without him. As Justice Meschke noted for the Court in *Anderson, supra,* at 555: "In divorce cases, our statute commands an 'equitable distribution' which is 'just and proper.' A basic dictionary definition of 'equitable' is 'fair to all concerned.' " (Citations omitted.) After a review of the entire record in this case, we remand with instructions to the trial court to partition and distribute the marital property separately to each spouse with instructions that Pius is to receive two-thirds of the marital estate and Aleta to receive one-third.

Reversed and remanded.

ERICKSTAD, C.J., concurs.

PEDERSON, Surrogate Justice, sitting in place of VANDE WALLE, J., disqualified.

PEDERSON, Surrogate Justice, concurring specially.

Because this case has now reached the posture that requires a choice between equally undesirable alternatives to be made,—I choose to concur in the results reached in the opinion by Justice Gierke for the reasons which I will attempt to articulate. I further specially concur in statements made by Justice Gierke relating to the need to sometimes separately partition assets in an acrimonious divorce rather

than awarding a tenancy in common or joint ownership in the property.

After a trial to the court without a jury, the trial court, in effect, made a very "conclusory" finding that it was equitable that Pius receive 69% of the marital estate and that Aleta receive 31% thereof. In the light of the requirement of Rule 52(a) NDRCivP, that the trial court make separate and special findings of fact which disclose to the parties (and to this court when there is an appeal) an understanding of the basis for the conclusions reached, we previously remanded so that, inter alia, supporting findings could be prepared.

The trial court thereafter issued its order containing the following rationale: "... there are no further findings of fact that I can or wish to make that could reasonably be expected to persuade the (Supreme) Court that my initial decision is appropriate." This is followed by a finding of fact that "... a fair and equitable division ... is that each party take one-half ..." of all the listed assets as well as debts.

The trial court has only added to my lack of understanding the basis for its determination. I would have preferred that this court react consistently and once more remand, insisting that the deficiency be resolved. That is not an acceptable choice to others on this court and I recognize their reasoning.

I reluctantly forego my usual reliance upon Rule 52(a) in this sort of situation and rely instead upon what appears to be obsolete statutory authority which has not been urged by either party in this case. To my knowledge we have not been urged to follow this part of this statute in any case in which I have participated over the last 12 years. In complete conflict with the abolishment of trial de novo by legislative action and with this court's adoption of rules of practice, section 14–05–25 NDCC incredibly provides in part:

"The disposition of the homestead by the court, and all orders and decrees touching the alimony and maintenance of either party to a marriage and for the custody, education, and support of the children are subject to revision on appeal in all particulars, including those which are stated to be in the discretion of the court."

In revising the disposition of the property in this case, acting in the capacity of a "super trial court," I lean toward a revision that more nearly follows the conclusions reached by the trial court in the first instance. I am not satisfied that there is no articulable basis for the 69%–31% split even though the trial court did not wish to prepare findings that would persuade this court.

MESCHKE, Justice, dissenting and concurring.

For the second time, the trial court's division of a substantial accumulation of marital property between these spouses to end 28 years of marriage is under appellate review. This time an equal division is rejected because of a supposed conflict with earlier findings of the trial court. But, I would affirm inasmuch as an equal division of property is surely equitable when the *Ruff-Fischer* guidelines "favor neither party," as we determined in our first review.

Initially, the trial court divided marital assets valued at $834,800, by awarding Aleta $199,700 in property and cash, as well as $1,000 per month for ten years with a present value of $58,400, for a total of $258,000 (31%). Pius received the remaining $576,000 (69%).

In our first decision, on Aleta's appeal, *Volk v. Volk*, 376 N.W.2d 16 (N.D.1985), this court determined that "most of the [*Ruff-Fischer*] guidelines would seem to favor neither party," did not identify any factors that favored one party over another, and concluded that the trial court's findings did "not support the disparity in the respective property awards...." We directed the trial court "to either make more specific findings of fact ... to justify this disparity or reexamine the distribution...." Justice Levine wrote separately, concurring that the record did "not support the disparity in the property awards," but she would have instructed the trial court "to divide the property equally since a

proper application of the *Ruff-Fischer* guidelines justifies no disparate treatment or property division."

After remand, the trial court chose not to make further findings to try to justify a disparate division. Instead, the trial court reexamined the distribution and determined that "a fair and equitable division of the marital property ... is that each party take one-half thereof along with one-half of any indebtedness existing against said property...."

Pius contends that this equal division is not equitable. He argues that the findings and judgment conflict, that the trial court did not follow the mandate of our first decision, and that the unseparated division in common was erroneous.

Where application of *Ruff-Fischer* guidelines does not favor either party, equal division of marital property upon dissolution of a longstanding marriage is surely equitable. In concluding that neither party was "favored" by the *Ruff-Fischer* guidelines in our prior decision, we summarized those factors as applied to this case:

"... [T]here is no great difference in the ages of the parties, their earning abilities, their station in life, the circumstances and necessities of each, their health and physical condition or their financial circumstances. It is undisputed that neither party brought any significant property into the marriage and that neither has inherited any of the property which they now own. While it is true that Pius has received $570 per month disability compensation since the Korean Conflict, there is no indication in the findings of fact that this was a factor in the trial court's decision. The marriage is one of long duration, *i.e.*, twenty-eight years. It appears that the trial court's rationale is based primarily on the conduct of the parties during the marriage in that it found 'nearly all of the property acquired during the marriage came as a result of Pius's work effort'.

"This rather general finding combined with the evidence in the record of Aleta's contributions both at home and outside of the home lead us to the conclusion that the findings of fact submitted for our review do not support the disparity in the respective property awards in this case." 376 N.W.2d at 18.

We recently emphasized in *Anderson v. Anderson*, 390 N.W.2d 554, 556 (N.D.1986), that "[w]hile a property division need not be equal in order to be equitable, any substantial inequality must be explainable." No adequate explanation for inequality has been advanced in this case, where the *Ruff-Fischer* guidelines favor neither party.

Pius argues that there is "obvious conflict" between the initial findings of fact and the current judgment of equal division of the marital property. He does not specifically identify the "obvious conflict," and I see none. In our first decision, we pointed out that the general finding that "nearly all of the property ... [was] a result of Pius's work effort" did not support a disparate award in view of Aleta's contributions both as a homemaker and as a full-time wage earner outside of the home for all but two early years of the marriage. Nothing has been added to the record on this second appeal to create a different view of the evidence.

The lack of further findings by the trial court spelling out how *Ruff-Fischer* factors lead to equal division is hardly significant, where the analysis in our first opinion demonstrated that *Ruff-Fischer* factors do not favor either party. As this court reiterated in *Routledge v. Routledge*, 377 N.W.2d 542 (N.D.1985) at 545, footnote 1:

"The trial court did not specifically refer to the *Ruff-Fischer* guidelines in its findings of fact. There is no rule, however, that requires that the *Ruff-Fischer* factors be specifically enumerated. [Citation omitted.] We will not set aside the trial court's determinations on property division or spousal support for failure to explicitly state the basis for its findings if that basis is reasonably discernible by deduction or inference. [Citations omitted.]"

Pius complains that the trial court followed Justice Levine's direction, rather than the mandate of the majority opinion. It is true that the result on remand is the

one recommended by Justice Levine in her separate opinion. But, the majority opinion did not specify a result on remand. Instead, the trial judge was given a range of alternatives: make further findings or re-examine the distribution. In my view, the trial court permissibly chose to reexamine the distribution, rather than to grope for findings that might support a disparate division.

Therefore, I dissent from the remand insofar as it dictates "an equitable property distribution" that is so far from equal, based upon a new and novel assessment of the evidence, unsupported by findings of fact, about which spouse contributed the greater economic effort to the marriage.

I concur with the majority opinion that, on remand, the trial court should partition and distribute separate property to each spouse. Of course, as in every divorce proceeding, the trial court has available to it the full set of remedial tools of partition proceedings. *See* Ch. 32–16, N.D.C.C., and 24 Am.Jur.2d, *Divorce and Separation,* § 931 (1983). Arithmetic exactness is not required, but substantial compliance with the formula of division should be sought.

LEVINE, J., concurs.