Christopher BADER, Plaintiff and Appellant,

v.

Cynthia BADER, Defendant and Appellee.

Civ. No. 890105.

Supreme Court of North Dakota.

Nov. 20, 1989.

Severin and Ringsak, Bismarck, for plaintiff and appellant; argued by Ken R. Sorenson.

Rauleigh D. Robinson (argued), Bismarck, for defendant and appellee.

LEVINE, Justice.

Christopher Bader appeals from a divorce judgment which granted Cynthia Bader custody of the couple's young

daughter, Samantha, spousal support, and a cash payment of $6,000 to accomplish an equitable property distribution. We affirm the custody and spousal support awards but reverse the property division and remand for a reconsideration of that portion of the judgment.

Christopher and Cynthia were married on July 20, 1985, in Cawker City, Kansas. At the time of the marriage, Christopher was 21 years old and Cynthia was 18. Christopher had a bachelor's degree in geology and Cynthia had a high school diploma. The Baders moved to North Dakota in October 1985 where Christopher took a job as a hydrologist with the State Water Commission. The Bader's only child, Samantha, was born on March 17, 1987.

The parties separated in October 1988 and Christopher filed for divorce. The trial court granted the divorce to both parties, awarded custody of Samantha to Cynthia and granted her permission to leave North Dakota with Samantha. The court awarded Cynthia monthly spousal support of $400 beginning April 1, 1989 and continuing through July 1, 1992. It also found that for purposes of property division, Christopher was at fault for the failure of the marriage and ordered Christopher to pay Cynthia $6,000 to achieve an "equitable" property division. Christopher appeals from that judgment. Cynthia requests attorney's fees for the appeal.

Christopher argues that the trial court erred in assessing fault and in awarding property. He also attacks the awards of spousal support, custody and permission to move to Illinois with the child.

■ Custody determinations, property divisions and awards of spousal support are all questions of fact subject to the clearly erroneous standard of Rule 52(a), North Dakota Rules of Civil Procedure. *Roen v. Roen,* 438 N.W.2d 170 (N.D.1989). A finding of fact is clearly erroneous when, although there is some evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Kaloupek v. Burfening,* 440 N.W.2d 496, 497 (N.D.1989).

## CUSTODY

■ With regard to custody, the trial court specifically found that the best interests of the child will be served by placing custody in Cynthia. The court stated:

"The mother is no less a caring, loving and competent parent than the father. The father has demonstrated some competency in child care, but clearly is a structured person, impatient and more career- and goal-oriented than family-focused. In the near future, as the child grows older, the inherent conflicts will not operate to the benefit of the child."

Between two fit and loving parents, the standard for determining custody is the best interests and welfare of the child. *Roen, supra,* 438 N.W.2d at 173. A majority of this court holds the view that the trial court should give equal weight to each relevant factor enumerated in NDCC § 14–09–06.2 to determine the best interests of the child. *See Gravning v. Gravning,* 389 N.W.2d 621 (N.D.1986). While there is no requirement that the trial court make an express written finding as to each statutory factor, *Lapp v. Lapp,* 293 N.W.2d 121 (N.D.1980), it would make appellate review more principled were that practice followed. However, the record does disclose sufficient evidence on the relevant factors to satisfy the requirements of § 14–09–06.2. *Lapp, supra,* 293 N.W.2d at 128. We believe the trial court weighed in Cynthia's favor the evidence regarding the parents' respective approach to child care, including discipline and nurture. From our review of the record in this case, we conclude that the trial court did not clearly err in finding that awarding custody to Cynthia was in the best interests of the child.

In awarding custody to Cynthia and visitation to Christopher, the trial court obviously took into account the fact that Cynthia intended to move to Illinois. It heard the testimony about Cynthia's father's home in Illinois to which Cynthia and Samantha would move. There was also testimony from Cynthia about her plan to enter beauty school in Illinois and her desire to

establish a new life for herself and her daughter. The trial court also heard testimony about Christopher's possible move out of state to attend graduate school. The trial court left it to the parties to structure visitation. We conclude the trial court did not err. in allowing Cynthia to move to Illinois with Samantha.

## PROPERTY DIVISION

■ In dividing marital property, the trial court is to make an equitable distribution of the assets. *Wastvedt v. Wastvedt*, 371 N.W.2d 142 (N.D.1985). There is no requirement that property be divided equally in order to be divided equitably, but when a substantial inequality in the property division exists, that disparity must be explained. *Volk v. Volk*, 404 N.W.2d 495, 497 (N.D.1987); *Anderson v. Anderson*, 390 N.W.2d 554, 556 (N.D.1986). Fault may be a relevant factor in property division. *Erickson v. Erickson*, 384 N.W.2d 659, 661 (N.D.1986). A majority of this court believes that no distinction need be drawn between economic fault and noneconomic fault. *Persons v. Persons*, 396 N.W.2d 744, 745 (N.D.1986).

■ The trial court found that "concerning property division ... the primary fault or responsibility of this marriage failing rests with the husband." It then divided the property as each party had requested but awarded an additional $6,000 to Cynthia because "[t]he disparity in the value of the property distribution necessitates a cash accommodation to make an equitable distribution."

The trial court made no finding of the value of property awarded to the parties. Without weighing the evidence, we are unable to discern from this ambiguous record what figures the trial court relied on to find a disparity in value. Moreover, the trial court's finding of fault strongly suggests that fault played a part in this division of property but we are unable to determine what impact it had or, indeed, what the fault was. We also wonder why, if the trial court intended the fault of Christopher to support a larger award of property to

Cynthia, it referred to a "disparity of value" to justify the $6,000 award.

The trial court did not explain what Christopher's fault was. The only hint at what Christopher's marital fault might be lies in the trial court's assessment of Christopher's character which is contained in the paragraph awarding custody of Samantha to Cynthia and which we have quoted earlier. We agree that these characteristics bear on the parent-child relationship and, therefore, were properly addressed in the best-interests-of-the-child determination. We fail, however, to see how these personality traits can constitute marital fault and how they make Christopher primarily responsible for the marriage failing. The record shows that Christopher and Cynthia were of different temperaments and that these personality differences were the cause of the dissolution of the marriage. In short, the parties were incompatible, their differences irreconcilable. They did not share the same goals, the same interests or the same philosophies. They disagreed on how Samantha should be raised. They disagreed on how they would spend their evenings. Christopher felt uncomfortable with Cynthia's friends. Cynthia had no interest in Christopher's work or projects. The two simply went their separate ways. We conclude the finding that Christopher was primarily at fault is clearly erroneous.

We are unable to discern whether the basis for the cash award to Cynthia is fault or disparate value. If it is fault, it is error. If it is disparate value, we are unable to decipher the evidentiary support for it. Therefore, we are left with the firm and definite conviction that a mistake was made in the property distribution. Accordingly, we reverse that part of the judgment related to the property division and remand to the trial court. On remand, the trial court is directed to either explain its finding of disparate value, or to redistribute.

## SPOUSAL SUPPORT

■ The trial court awarded Cynthia spousal support of $400 a month for a total of 39 months, finding that Cynthia "is plan-

ning to enter the work force but needs training for her chosen field. Her disadvantage has been as a result of this marriage.... [The sum awarded] will aid [Cynthia] in completing her training."

Christopher attacks the award on three grounds. First, he argues that there is no support in the record for a finding that Cynthia was disadvantaged by the marriage. Second, he argues that there is no factual basis for awarding support for 39 months. Finally, he argues that Cynthia's marital misconduct should have foreclosed an award of spousal support to her.

Reviewing the record, we find sufficient evidence that Cynthia was disadvantaged by the marriage. Instead of pursuing an income-producing career, Cynthia became a wife and mother. When she expressed her desire to go to beauty school for training, Christopher rejected the idea and insisted that she go to Bismarck Junior College to take clerical courses. Although it was not the kind of schooling she wanted, Cynthia acquiesced.

Cynthia testified that she wanted to attend beauty school, a program of some 18 to 24 months' duration. The trial court awarded Cynthia spousal support for a period of 39 months. While the court did not articulate why it settled on 39 months as the duration for the support, we have not required such an articulation. We have said only that there must be some factual basis in the record for the length of time support is awarded. *Smith v. Smith*, 326 N.W.2d 697, 700 (N.D.1982).

The court intended the spousal support to aid Cynthia in completing her training. We do not read this stated purpose as narrowly as does Christopher, who seems to be arguing that an award of 39 months' duration is excessive when, at most, the training Cynthia seeks will take only 24 months to complete.

We believe the trial court recognized that Cynthia would need support both before and after the schooling if she were to rehabilitate herself. She needs the support payments to finance her relocation to Illi-nois with Samantha, to help finance her tuition at the beauty school there, and, once she graduates from the program, to help her get established in her new career. We think that the trial court had this broader rehabilitative purpose in mind when it ordered support for a period of 39 months.

We do not agree with Christopher that Cynthia's liaison with another man should have disqualified her from an award of rehabilitative spousal support. Cynthia testified that she became involved with another man only in the final month she and Christopher lived together. The record is clear that, by that point in time, the marriage was irretrievably broken. While the conduct of the parties is a factor to be considered in ordering spousal support, it is but one factor and there is no requirement that the award be based on conduct alone. *Mees v. Mees*, 325 N.W.2d 207 (N.D.1982). When an award of spousal support is rehabilitative, as it is here, its purpose is not to penalize but, rather, to provide the means by which a disadvantaged spouse may become self-supporting. *See Rustand v. Rustand*, 379 N.W.2d 806, 807 (N.D.1986). We find no error.

Cynthia requests an award of attorney's fees for the costs of defending the appeal. Although this court and the trial court have concurrent jurisdiction to award attorney's fees on appeal, in a divorce case, we prefer that the initial determination be made by the trial judge, who is better able to determine the financial circumstances of the parties. *Routledge v. Routledge*, 377 N.W.2d 542, 549 (N.D.1985).

Accordingly, we affirm the judgment as to custody and spousal support, but reverse the property division and remand for further proceedings in accordance with this opinion and consideration of Cynthia's request for attorney's fees.

ERICKSTAD, C.J., and GIERKE, J., concur.

VANDE WALLE, J., concurs in the result.

MESCHKE, Justice, concurring and dissenting.

I concur in the majority opinion's decision on custody and spousal support. I respectfully dissent from the reversal of the property division.

The amount of property was modest. Values were virtually all agreed or undisputed. It was an uncomplicated property situation.

The trial court attached a copy of the spouses' signed "8.3 Property & Debt Schedule" as Exhibit 2 to the Findings, Conclusion, and Order for Judgment. This Schedule agreed on the value of items totalling $5,650, in addition to the home which was valued equal to its mortgage and awarded to Christopher. The trial court set aside items totalling $1,520 to Cynthia and items totalling $4,130 to Christopher. Evidence at the trial disclosed that Christopher also had a bank balance of $1,050 and nearly $3,000 in available retirement funds, both not reported on the schedule. Although Christopher was also left with nearly $10,000 in debts (compared to $450 for Cynthia), most of Christopher's debt ($8,000) were for his student loans preceding the marriage. Without offsetting debts, Christopher would keep over $6,000 more in property, as well as the house, unless some adjustment was made.

While it is not possible to compute the "disparity" to exactly reflect the $6,000 ordered paid as a property award to Cynthia, it was also payable four months later without interest. I do not believe that the award was so substantially unequal or unexplainable as to compel added legal proceedings and expense for these two young people. Therefore, I would affirm the trial court's property division.