**Patricia Ellen HEGGEN, Plaintiff, Appellant and Cross–Appellee,**

v.

**John Peter HEGGEN, Defendant, Appellee and Cross–Appellant.**

**Civ. No. 890054.**

Supreme Court of North Dakota.

March 1, 1990.

Harms Law Office, Williston, for plaintiff and appellant; argued by Robert W. Harms.

Zuger Law Offices, Bismarck, for defendant and appellee; argued by William E. McKechnie.

LEVINE, Justice.

Patricia Heggen appeals from a divorce judgment, challenging the trial court's division of marital property and award of child support. John Heggen cross-appeals, seeking a reversal of the award of custody to Patricia of the couple's two youngest children. We affirm as to custody and child

support but reverse the property division and remand.

Patricia Heggen and John Heggen were married in July 1965 and are the parents of four children. During their marriage, the couple acquired a substantial marital estate along with accompanying debt. In addition to a farm operation, the Heggens own Heggen Equipment, Inc., a business comprised of three related businesses: a new and used car dealership, a farm implement dealership, and a machine shop, all located in Watford City.

After twenty-two years of marriage, Patricia and John separated in July 1987. Following a three-day trial, judgment was entered awarding Patricia a divorce and dividing the marital property. The trial court awarded custody of the two youngest children, ages 10 and 8, to Patricia and ordered John to pay child support of $240 per month for each child.

At the outset we note, as the trial judge did: "A significant problem facing the court in this action was the failure of the parties to jointly prepare a Rule 8.3 Listing of Property and Debts. The failure to comply with this rule causes untoward confusion and results in misleading the court as to asset and debt claims as well as costs and value contentions. Thus, there may be some inexactness in the property and debt division."

■■■ Rule 8.3, NDROC, requires parties in a contested divorce to jointly prepare a complete listing of their property and debts. *Glass v. Glass*, 344 N.W.2d 677, 678 (N.D.1984); *Freitag v. Freitag*, 318 N.W.2d 760, 762 (N.D.1982). The purpose of the rule is to assist the trial court in its division of marital property by having the parties provide the court with a list of mutually agreed-to values or, if no agreement is reached, separately stated values. Although there is no explicit sanction for noncompliance specified by the rule, at the very least, if, at the time of trial, Rule 8.3 has not been complied with, the trial court should declare a recess until the parties have prepared the joint listing. *Freitag, supra.* A trial court may properly require compliance with Rule 8.3 as a condition precedent to a contested divorce hearing. *See* NDROC 8.3. *Cf. Rustand v. Rustand*, 379 N.W.2d 806, 809 (N.D.1986) [suggesting compliance with Rule 8.3 would also be advantageous in a default divorce].

## I. PROPERTY DIVISION

Patricia argues that the trial court erred in its valuation of some property, calculated some debt twice, and failed to include assets in the marital estate. Specifically, she points to the Heggen Equipment, Inc., real estate, valued at $40,000, and Heggen Equipment, Inc., valued at minus $55,108. She also complains of the omissions from the marital estate of a $40,000 debt owed to John by the corporation, drought payments of $36,713 and $19,200 in liquid assets. We consider each of these alleged errors in turn.

The trial court did not make a specific finding of the net value of the marital estate. It did, however, list the values of the property awarded to each party and the amount of debt awarded to each party to reach "net totals" for each party. From these findings, it appears that the trial court valued the gross marital estate at $889,027, with debts of $745,264, leaving a net value of $143,763. *See Branson v. Branson*, 411 N.W.2d 395, 397 (N.D.1987).

By the trial court's reckoning, John received property worth $823,345 and the responsibility to repay debts totaling $744,264, for a net total award of $79,081. Patricia was awarded property valued at $65,682 and made responsible for $1,000 of debt, for a net award of $64,682. Thus, John received about fifty-five percent of the net estate to Patricia's forty-five percent. Patricia contends that if all marital property were correctly valued, her receipt of only $64,842 worth of property is clearly inequitable. We agree.

■■■ As we have stated on many occasions, a property division need not be equal to be equitable, but a substantial disparity should be explained. *Volk v. Volk*, 404 N.W.2d 495, 497 (N.D.1987). Further, a division of marital property is viewed as a finding of fact subject to the clearly erro-

neous standard of Rule 52(a), NDRCivP. *Bader v. Bader,* 448 N.W.2d 187, 188 (N.D. 1989). Under that standard, we reverse only if there is no evidence to support a finding or if, upon a review of the entire evidence, we are left with a definite and firm conviction that a mistake has been made. *Lippert v. Lippert,* 353 N.W.2d 333, 335 (N.D.1984).

### A. Heggen Equipment Real Estate

The trial court valued the Heggen Equipment real estate, consisting of some 11.38 acres containing several buildings, at $40,-000.[1] The only support in the record for that valuation is the testimony of John Heggen and David Brendsel, a vice-president at First International Bank.

In ascribing a $40,000 value to the property, John testified that in his opinion, the Heggen Equipment real estate is "only worth what you can dump it for at auction."

■■■ An owner of property may testify as to the value of his own property. *Meyer v. Hansen,* 373 N.W.2d 392, 397 (N.D.1985). However, an owner's opinion of value is insufficient to support a value determination by the factfinder if it is given without a valid basis or is based upon improper facts or analysis. *Jim's Hot Shot Serv. v. Continental West. Ins. Co.,* 353 N.W.2d 279, 282 (N.D.1984). Ordinarily, fair market value, not "liquidation value," is the proper method of valuing property in a divorce. *Liddle v. Liddle,* 140 Wis.2d 132, 410 N.W.2d 196, 199 (Wis.Ct.App.1987); *Corliss v. Corliss,* 107 Wis.2d 338, 320 N.W.2d 219, 222 (Wis.Ct.App.1982). Fair market value is the price a buyer is willing to pay and the seller is willing to accept under circumstances that do not amount to coercion. *Mike Golden, Inc., v. Tenneco Oil Co.,* 450 N.W.2d 716 (N.D.1990).

■ John's opinion of the value of the property as the price it would bring "dumped at auction" is based on improper facts and analysis because it is based on liquidation value rather than fair market value. While liquidation value, rather than fair market value, may be appropriate under certain circumstances involving distressed conditions, there is no evidence that the property in question was threatened by foreclosure or other market stress.[2]

Brendsel's opinion was also based upon liquidation value. Although at one point Brendsel referred to fair market value, he testified that $40,000 is a "liquidation value" for the real estate, buildings and fixtures. He explained that he based his $40,-000 valuation on recent foreclosure sales by the Small Business Administration of similar commercial buildings in Rugby, Bottineau and Carrington. Thus, Brendsel's testimony, as well as John's, focused on coerced sales at which the seller accepts a "depressed price" and takes a "beating on the market." Foreclosure sales, because of the coercive circumstances surrounding them, should not be used to establish fair market value. It is clear from both John and Brendsel's testimony that, in placing a valuation of $40,000 on the Heggen Equipment, Inc., property, neither had in mind a sale by a willing seller to a willing buyer. Therefore, their testimony did not establish the property's fair market value. Consequently, the trial court's finding of $40,000 value is unsupported by the evidence and is clearly erroneous.

There was other evidence of value of the Heggen Equipment property. Patricia valued the property at $259,000, a figure supported by a tax assessment which identified the "true and full value" of the property as $259,000 and the assessed value at $129,500. There was also testimony that just ten months before the trial, Brendsel's

---

1. In fact, the trial court deducted from its $40,-000 valuation of the Heggen Equipment real estate the amount of the mortgage against it of $153,986 (notwithstanding the antideficiency judgment statutes with their " fair value" protection for debtors, *see* NDCC §§ 32–19–06, 32–19–07 [antideficiency statutes] ), leaving a net valuation of *minus* $113,986.

2. The concurring opinion assumes that depressed economic conditions in the locale justify a fire sale price. However, there was no evidence that the corporation was in default or that a liquidation was in the offing. To the contrary, John argued against selling the corporation on the ground that his management was the key to its past and future success.

bank appraised the property at $350,000 and loaned John and Patricia approximately $150,000 secured by a mortgage on the property. However, on remand the trial court is free to receive additional evidence of fair market value.

### B. Heggen Equipment, Inc.

Patricia also contends that the trial court erred by determining, in effect, that the value of Heggen Equipment, Inc., was a negative $55,108. She asserts that the trial court achieved this unintended result by overlooking the fact that the value of the stock awarded to John, set by the trial court at $284,900, should have been a net value and not, as the trial court treated it, a gross value. She contends that when the trial court included the $284,900 value in the total marital estate but then proceeded to offset it with associated corporate debt, the effect was to deduct the corporate debt twice in arriving at the net marital estate. She does not dispute that there is $340,008 in corporate debt but she asserts that all the estimates of corporate value given at trial were net values, values which accounted for the debt of the corporation.

In asserting that the trial court found a negative value of $55,108 for the corporation, Patricia overlooks the fact that the trial court also included in its valuation of the marital estate, $93,060 in liquid corporate assets. Adding this figure to the stock valuation of $284,900, yields a value of $377,960 for the corporation. Nevertheless, if Patricia is correct in her assertion that the stock valuation is a net value, the court's twice counting the corporate debt would reduce the value of the corporate assets to $37,952. We agree that this finding is not supported by any evidence and is clearly erroneous.

The evidence demonstrates that witnesses for both parties valued the corporation on a net basis. John's accountant testified that the corporation had a *net* value of $320,000. Patricia's accountant testified that the corporation's *net* value was $340,000. An exhibit prepared by John stated a value of $150,000 without any associated corporate debt. Thus, the trial court's valuation of $377,960 (stock plus corporate

liquid assets) is supported by the evidence only if the $377,960 figure is a net value. By definition, a net value is one from which liabilities have already been deducted. *See Urlaub v. Urlaub*, 325 N.W.2d 234, 237 (N.D.1982); *Hoge v. Hoge*, 281 N.W.2d 557, 561 (N.D.1979). To include the net corporate value in the calculation of the marital estate and then offset it with corporate debt, thereby reducing the net marital estate further, is clear error.

### C. Debt Owed To John

Patricia contends that the trial court should have included in the marital estate a $40,000 debt owed by Heggen Equipment, Inc., to John for a loan he made to the corporation. Although both accountants testified that the corporation owed $40,000 to John which is carried upon the corporate books as a liability, John's accountant testified that it was not John's intention to treat the debt as equity. Thus, John argues that the debt is "nothing more than a paper transaction for accounting purposes and does not represent real value." The trial court issued no finding of fact regarding this loan. It did not include it as a personal asset in John's column nor can we discern from the record whether it was included as part of the corporate liability.

On remand, we instruct the trial court to consider this matter and determine the value of the corporate debt to John and the marital estate.

### D. Liquid Assets

After trial, Patricia filed a motion to take additional testimony regarding $19,200 which she claimed existed in IRA accounts John had undervalued and in other accounts which he had failed to disclose and which she had discovered only after trial. She claims it was error for the trial court to fail to rule on her motion or alternatively, not to have included her valuation of these accounts in its calculation of the marital estate based on her post-trial affidavit.

The trial court did consider Patricia's motion, but denied it:

"17. Other relief or awards as may have been requested before, during or

after trial? Considered but not approved."

Regarding the accounts Patricia complains were undisclosed, her affidavit was insufficient to alert the trial court to the nature, identity and location of these accounts. Under the circumstances, we cannot say the trial court abused its discretion in denying her motion.

The difference between the values of IRAs as assigned by the court and as asserted by Patricia is about $5,200. There was evidence to support the trial court's valuation and we are not convinced a mistake was made.

### E. Drought Payments

■ Patricia argues that the trial court erred in failing to include 1988 drought assistance payments for which John had made initial application and which would total some $36,000, after refunds. It is likely the trial court believed that the receipt of future payments was too speculative so early in the application process. Accordingly, it was not clearly erroneous to exclude potential payments from calculation of the marital estate.

## II. CUSTODY AND CHILD SUPPORT

We turn now to the issues of child custody and child support. At issue here is the trial court's award of custody of the two youngest Heggen daughters to their mother as well as the award of child support of $240 per month per child to be paid by John.

John contests the award of custody to Patricia as clearly erroneous. He asserts that the trial court awarded Patricia custody solely because, as primary caretaker, "she has spent more time with them." John argues that Patricia's residential changes, use of babysitters, and her working outside the home, among other things, indicate that he should be awarded custody of the girls. Also in his favor, he asserts, is the fact that the girls' two older sisters live in his home while the paternal grandparents live next-door. All are willing to assist John in caring for the youngest girls, he says.

■ A trial court's determination of custody is a finding of fact which will not be disturbed on appeal unless it is clearly erroneous. NDRCivP 52(a); *Bader, supra,* 448 N.W.2d at 188. The trial court, in its findings of fact, reviewed the guidelines enunciated in NDCC § 14–09–06.2. It awarded custody to Patricia after finding that she has been the children's primary caretaker and that the following factors were significant:

"i. That the children are likely to benefit from maintaining day to day contact with the parent [Patricia] on whom the children have depended for satisfying their basic physical and psychological needs.

"ii. In light of the length of time the children have been residing with [Patricia], it is desirable to maintain continuity in that residential setting.

"iii. [Patricia] appears better able at this time to supply the children's needs for approval, acceptance, affection, care, control, comfort, devotion, dependence, discipline, guidance, stability and protection.

"iv. Except where noted above, each parent appears about the same on the scales when the court balances, evaluates and considers the factors contained in 14–09–06.2 in determining the best interests and welfare of the children in awarding custody."

■ In finding that several of the statutory "best interest" factors supported an award of custody to Patricia, the trial court recognized the importance of stability and continuity in the lives of the children and the benefits to the children from continuing the children's relationship with the parent who had cared for them on a daily basis. *See Roen v. Roen,* 438 N.W.2d 170, 174 & n. 2 (N.D.1989). While the "primary caretaker" enjoys no paramount or presumptive status under the majority view of this Court, it does deserve recognition. *Gravning v. Gravning,* 389 N.W.2d 621, 622 (N.D.1986). Established patterns of care and nurture are relevant factors for the trial court to have considered. *Cf. Von Bank v. Von Bank,* 443 N.W.2d 618, 621

(N.D.1989) [role of each parent in caretaking is relevant factor in deciding whether custody should be changed]. We conclude the findings in support of the custody award are not clearly erroneous.

Finally, we consider Patricia's argument that, given John's resources, a child support award of $240 per month per child is clearly erroneous. Like all the issues we have considered in this appeal, a determination of child support is a finding of fact reversible only upon a showing that it is clearly erroneous. NDRCivP 52(a); *Schmidt v. Schmidt*, 325 N.W.2d 230, 233 (N.D.1982).

■ The objective of the trial court in setting child support must be to strike a balance between the needs of the children and the ability of the non-custodial parent to pay. *Fraase v. Fraase*, 315 N.W.2d 271, 277 (N.D.1982). However, Patricia makes no argument based upon the needs of the children. She argues only that the figure set by the trial court is too low because John's $36,000 salary is nearly all disposable income in light of the many perks he receives as head of Heggen Equipment, Inc. She therefore urges this Court to increase the child support to at least $1,000 per month to reflect John's income and financial resources.

■ The fact that the non-custodial parent earns a substantial income may not per se entitle the children to support payments in excess of their appropriate needs. We say "appropriate" advisedly because it is likely that the "needs" of a child in a family with substantial income are more expansive because of the standard of living the family has enjoyed. Where there are sufficient resources, children of divorce are entitled to enjoy a standard of living post-divorce comparable to that enjoyed while the family was intact. *Bagan v. Bagan*, 382 N.W.2d 645, 648 (N.D.1986).

■ The trial court apparently determined that the children's needs would be met by the sum it awarded as child support. While the award is far from generous, we are unwilling to substitute our judgment for that of the trial court.

Patricia also argues that the child support award is clearly erroneous because it falls below the guidelines set by the Department of Human Services pursuant to NDCC § 14-09-09.7. Section 14-09-09.7, NDCC, was amended, effective July 12, 1989. The amended legislation, coming as it did after trial in this case, does not apply here. *See Kottke v. U.A.M.*, 446 N.W.2d 23, 25-26 n. 3 (N.D.1989). *See also Olson v. Olson*, 445 N.W.2d 1, 3-4 n. 2 (N.D. 1989).

Before it was amended, § 14-09-09.7 incorporated child support guidelines set by the Department of Human Services that were not binding upon the trial court.[3] *Burrell v. Burrell*, 359 N.W.2d 381, 384 (N.D.1985). Although the support guidelines were not binding, a trial court nevertheless was required to consider them. *Id.* We assume the trial court fulfilled its duty and took the child support guidelines into consideration when it decided the amount of child support. The failure to adhere to those guidelines does not make the award of child support clearly erroneous. *Burrell, supra; In re Kary*, 376 N.W.2d 320, 321 (N.D.1985).

To summarize, we affirm the trial court's awards of custody and child support. We reverse the trial court's property division and remand with instructions to recalculate and redistribute the marital estate in light of this opinion.

Affirmed in part, reversed in part and remanded with instructions.

MESCHKE, J., and VERNON R. PEDERSON, Surrogate Justice, concur.

---

3. The 1989 amendments to § 14-09-09.7 provide a rebuttable presumption that the amount of child support set by the Department of Human Services' guidelines is the correct amount of child support. *See* NDCC § 14-09-09.7(3) (Supp.1989). The law now requires that the trial court make a written finding or a specific finding on the record if it determines the presumption has been rebutted. *Id.* The presumption may be rebutted if a preponderance of the evidence establishes that factors not considered by the Department's guidelines will result in undue hardship to the obligor or the child. *Id.*

VERNON R. PEDERSON, Surrogate Judge, sitting in place of GIERKE, J., disqualified.

VANDE WALLE, Justice, specially concurring.

The majority opinion goes to great length to note that "fair market value" and not "liquidation value" is the proper method of valuing property in a divorce, and then observes, "John's opinion of the value of the property as the price it would bring 'dumped at auction' is based on improper facts and analysis because it is based on liquidation value rather than fair market value." I agree that under normal circumstances there is a difference between market value and liquidation value and that market value is the proper measure of the worth of the property. However, in view of the circumstances existing in the drouth-stricken, depressed economy of western North Dakota there may be little, if any, difference between the market value and liquidation value of property used for the operation of a business engaged in the selling of farm implements, cars, and the repair thereof. Western North Dakota is replete with empty buildings which once held such enterprises and which may be purchased for only a fraction of the assessed value. If the business is operating it may, nevertheless, have a market value considerably lower than its appraised value or its assessed value and there may, in fact, be no real probability that the property could be sold at a price anywhere near its appraised value, given the existing circumstances.

The trial court is entitled to consider those matters in weighing the evidence. It is not in error because it gave more weight to John's testimony as to the value of the property than it did the assessed value for tax purposes or an appraisal some ten months before trial for loan purposes. Therefore, contrary to the majority, I would not discount John's opinion as to the value of the property nor exalt the opposing testimony.

Were this issue the only issue in the matter of the division of the property, I would affirm the trial court. I agree, however, that there are questions as to the value placed on other property constituting the marital estate as well as to the debts of the parties. I therefore agree that the matter should be remanded to the trial court. It is my understanding that on remand the trial court is at liberty to accept additional evidence as to the value of the entire marital estate, if it deems it necessary, and to redistribute the property in light of its findings thereon and that it is not necessarily required to adhere to any of its previous findings as a result of this appeal.

I concur in the disposition of the issues relative to child custody and child support.

ERICKSTAD, C.J., concurs.