Curtis D. SWANSTON, Plaintiff, Appellee and Cross–Appellant,

v.

Bonnie SWANSTON, Defendant, Appellant and Cross–Appellee.

Civ. No. 920117.

Supreme Court of North Dakota.

July 1, 1993.

Mary D. Nordsven of Howe, Hardy, Galloway & Maus, Dickinson, for defendant, appellant and cross-appellee.

Curtis D. Swanston, pro se, Bismarck.

LEVINE, Justice.

Bonnie Swanston appeals from that part of a divorce judgment awarding custody of the couple's minor children, Jamie and Valerie, to their father, Curtis D. Swanston. We affirm.

Curtis and Bonnie were married in 1967. They separated in 1989. At the time they separated, two of their four children, Jamie, born September 27, 1974, and Valerie, born September 6, 1982, were minors. Since the separation, Curtis has been Jamie and Valerie's primary caretaker.[1]

Curtis filed for divorce in 1990, simultaneously moving for temporary custody of Jamie and Valerie. An interim order granting the motion for temporary custody was entered. Bonnie did not contest the order.

Curtis moved for a home study in 1991. *See* NDCC § 14–09–06.3. Bonnie did not resist the motion. The trial court, however, reserved ruling on the motion, advising the parties to stipulate within approximately twenty days "the appropriate details" of the study, "including who will conduct [it], what will be included, and the terms of payment." Curtis later wrote the court that he and Bonnie had agreed that the motion for a home study should be "converted" to a motion for the appointment of a guardian ad litem. The parties, however, could not agree upon a candidate for appointment, and thus submitted different recommendations for the court's consideration. The court thereafter denied the motion for a home study, reasoning that the parties had not complied with the request that they stipulate to the details of the study.

■ A trial on the matter was held October 17, 1991. The trial court awarded custody of Jamie and Valerie to Curtis. On appeal, Bonnie contends that the court's custody decision is clearly erroneous. She also claims the trial court abused its discretion in denying "the parties' request for a

home study and appointment of a guardian ad litem."[2] We consider Bonnie's contentions separately.

■ The standard for deciding child custody in a divorce case is "the best interests and welfare of the child." NDCC § 14–09–06.1. In applying that standard, the trial court must consider the "best interests" factors enumerated in section 14–09–06.2, NDCC, and should, according to the majority view of this court, give equal weight to each relevant factor. *E.g., Heggen v. Heggen,* 452 N.W.2d 96 (N.D.1990); *Bader v. Bader,* 448 N.W.2d 187 (N.D.1989).

■ A trial court's determination of custody is a finding of fact subject to the clearly erroneous standard of review. *E.g., Heggen, supra; Bader, supra; Roen v. Roen,* 438 N.W.2d 170 (N.D.1989). A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, although there is some evidence to support it, the reviewing court, on the entire evidence, is left with a definite and firm conviction that a mistake has been made. *E.g., Blotske v. Leidholm,* 487 N.W.2d 607 (N.D.1992).

■ In deciding to award custody of Jamie and Valerie to Curtis, the court carefully and painstakingly reviewed the "best interests" factors of section 14–09–06.2, NDCC. It determined that some factors were inapplicable and that others favored neither Curtis nor Bonnie. It decided, however, that several factors weighed in Curtis' favor, finding that Bonnie's "illnesses of alcoholism and depression" would continue to adversely affect her ability to nurture and care for the children; that Curtis was the children's primary caretaker; and

1. Valerie lived in Dickinson with Bonnie for two months in 1990. She returned to Curtis' custody after Bonnie was committed to the State Hospital for treatment for depression.

2. At the close of the proceeding, the trial court interviewed Jamie and Valerie in camera outside the presence of the parties. The court permitted counsel to attend the interview, but ordered that they not divulge the children's testimony to Bonnie and Curtis. Bonnie contends that "[t]he parties' due process rights were jeop-

ardized by the manner in which the trial court conducted the in camera interview [of] the children." She says that the court did not allow cross-examination of the children and that she, therefore, was foreclosed from rebutting damaging statements made by Jamie. We have no record of either the manner in which the in camera investigation was to be conducted or Bonnie's objection, if any, to the procedure. Accordingly, there is nothing for us to review on appeal. *E.g., First Western Bank of Minot v. Wickman,* 500 N.W.2d 896, 898 n. 2 (N.D.1993).

that the children lived in a stable and satisfactory environment and preferred to remain there. Consequently, the court found "that it would be in the best interests and welfare of Jamie and Valerie that Curt [ ] have their primary care, custody and control subject to reasonable visitation" by Bonnie.

In our view, the trial court's finding that several of the statutory "best interests" factors dictated an award of custody to Curtis is supported by the record. There exists ample evidence of Bonnie's repeated inpatient treatment for serious emotional difficulty and chemical dependency, and the inevitable, detrimental impact that her illness and the time she spent in treatment had on her ability to nurture and care for her children. The record signals that Bonnie's rehabilitation efforts should continue and will necessarily detract from her ability to adequately nurture the children, as the trial court noted. The evidence also supports the trial court's findings that the children are well adjusted, well established and well accepted in their community. It is clear that the children are reaping the benefits of community stability and the home Curtis has made for them.

■ The trial court considered favorably the stability and continuity of the children's relationship with Curtis, and the benefits that would flow from continuing that relationship. "Established patterns of care and nurture are relevant factors for the trial court to have considered." *Heggen v. Heggen*, 452 N.W.2d at 101 [citing *Von Bank v. Von Bank*, 443 N.W.2d 618 (N.D. 1989)]; *see also Roen, supra; Gravning v. Gravning*, 389 N.W.2d 621 (N.D.1986). We conclude that the findings in support of the award of custody to Curtis are not clearly erroneous.

■ We now turn to Bonnie's contention that the trial court abused its discretion in denying the parties' requests for a home study and for the appointment of a guardian ad litem. The decision to grant or deny a motion for a home study rests within the sound discretion of the trial court. NDCC § 14–09–06.3. The trial court abuses its discretion when it acts in an arbitrary, unreasonable or unconscionable manner. *E.g., North Dakota Council of School Administrators v. Sinner*, 458 N.W.2d 280 (N.D.1990). The parties did not abide by the trial court's instruction to stipulate to the details of a home study. In light of their disregard of the court's instruction, we perceive nothing arbitrary, unreasonable or unconscionable about the court's denial of the motion for a home study.

■ We have some problem understanding the nature of Bonnie's attack upon the trial court's alleged denial of the parties' request for a guardian ad litem. Although it is clear that the court denied the motion for a home study, it is not clear whether the court denied the request for a guardian ad litem or simply overlooked it, because no separate motion clearly setting forth the request was ever filed. Moreover, Bonnie failed to clear up the confusion by directing the court's attention to the issue or otherwise registering a protest at any time. Consequently, we conclude that the trial court's failure to appoint a guardian ad litem was neither arbitrary, unreasonable nor unconscionable.

The judgment is affirmed.

VANDE WALLE, C.J., and NEUMANN, SANDSTROM and MESCHKE, JJ., concur.