**Loni STOELTING, Plaintiff and Appellant,**

v.

**Bruce STOELTING, Defendant and Appellee.**

**Civ. No. 870022.**

Supreme Court of North Dakota.

Sept. 29, 1987.

by the WIN coordinator, an employee of Job Service.

Lundberg, Nodland, Lucas & Schulz, Bismarck, for plaintiff and appellant; argued by Ardell Tharaldson.

Howe, Hardy, Galloway & Maus, Dickinson, for defendant and appellee; argued by Mary Elizabeth Nordsven.

MESCHKE, Justice.

Loni L. Stoelting appeals an amendment of her decree of divorce from Bruce D. Stoelting, changing payments "for property settlement" to payments "for separate maintenance." We reverse.

On the day of trial, Loni and Bruce settled their divorce disputes. Their settlement agreement was approved and reflected in the divorce decree:

"For property settlement, the defendant [Bruce] shall pay the plaintiff [Loni] the sum of Twenty Thousand Dollars ($20,000.00) on or before September 15, 1985. A balance of Sixty Thousand Dollars ($60,000.00) shall be paid to the plaintiff by the defendant with seven percent (7%) annual interest. The $60,-000.00 shall be paid to the plaintiff in Seventy-two (72) monthly installments of principal and interest, with the first payment due on November 1, 1985, and a like payment due each first of the month thereafter for 71 additional months. The balance of $60,000.00 shall be secured in the form of a second mortgage on the marital home, executed by the defendant, and that no additional encumbrance of the property or jeopardy to this mortgage shall be made without the prior written approval of the plaintiff. The $60,000.00 payment terms shall be renegotiated by the parties in the event of a default on the sale of the marital drug store, and in the event this default would decrease the value of the marital property.

\* \* \* \* \* \*

"No spousal support is awarded."

Later, upon motion by both parties, the decree was amended to increase the number of monthly installments from 72 to 84.

Nearly a year after the initial decree, Bruce moved to amend it under Rule 60(b)(i), N.D.R.Civ.P., claiming that "due to mistake and/or inadvertence, the language in the Amended Judgment herein may not accurately reflect the agreement of the parties." Bruce asserted that it was "the intention of the parties that the payments ... [are] to be income to [Loni] and deductible to [Bruce]," and that "the language of the Amended Judgment as presently written may not comply with the Internal Revenue Code and Regulations pertaining thereto as to the intended tax treatment of the payments." Bruce proposed new lan-

guage, describing the payments as "alimony and separate maintenance" terminable upon Loni's death. Loni opposed the change, asserting that although "both attorneys agreed at the time that the stipulation of equal monthly payments extending 7 years would make the payments income to [Loni] and a deduction to [Bruce] ..., [t]he parties did not agree to guarantee that the I.R.S. would accept our understanding."

The trial court, without holding a hearing and without giving a reason, granted Bruce's motion, and amended the decree to read:

> "*For separate maintenance of the spouse,* the Defendant [Bruce] shall pay the Plaintiff [Loni] the sum of Twenty thousand DOLLARS ($20,000.00) on or before September 15, 1985. A balance of Sixty thousand DOLLARS ($60,000.00) shall be paid to the Plaintiff by the Defendant with seven percent (7%) annual interest. The $60,000.00 shall be paid to the Plaintiff in Eighty-four (84) monthly cash installments of principal and interest, with the first payment due on November 1, 1985, and a like payment due each first of the month thereafter for 83 additional months *or until the death of the Plaintiff, whichever shall first occur.* The balance of $60,000.00 shall be secured in the form of a second mortgage on the marital home, executed by the Defendant, and that no additional encumbrance of the property or jeopardy to this mortgage shall be made without the prior written approval of the Plaintiff. The $60,000.00 payment terms shall be renegotiated by the parties in the event of a default on the sale of the marital drug store, and in the event this default would decrease the value of the marital property. *That said payments shall be deemed alimony and separate maintenance payments, deductible to Defendant, and income to the Plaintiff pursuant to Section 71 of the Internal Revenue Code."* [Emphasis shows changed language.]

The sentence, "[n]o spousal support is awarded," was deleted.

Loni asserts that the trial court erred in removing reference to payments for "property settlement" and in referring to "alimony and separate maintenance payments" terminable upon her death. We agree.

■ Clearly, in the initial decree, the payments were part of a property settlement. It is well settled in this state that a final divorce decree distributing property can be modified only in the same manner and for the same reasons as other judgments. *Watne v. Watne,* 391 N.W.2d 636, 638 (N.D.1986).

But, relying upon *Wastvedt v. Wastvedt,* 371 N.W.2d 142 (N.D.1985), Bruce asserts that this amendment did not change the agreement of the parties, but merely "clarified the language of the decree to carry out the intent of the parties as reflected in the record." In *Wastvedt, supra,* 371 N.W.2d at 144, we recognized that in certain circumstances a final distribution of property can be "clarified," as distinguished from "modified," and we held that an "action taken by a court which subsequently defines the obligations of the parties is permissible if the substantive rights remain unchanged."

■ We cannot accept Bruce's argument that this amendment merely clarifies the parties' agreement, without substantively changing it. The decree declared that no spousal support was awarded and that the payments were "property settlement." The amendment deleted the declaration that no spousal support was awarded, removed the "property settlement" description, and re-defined the payments as "alimony and separate maintenance payments" terminable upon Loni's death.

Generally, payments for property distribution do not terminate upon the death of either spouse. However, a payee's death usually terminates spousal support unless extraordinary circumstances call for its continuance. *See Seablom v. Seablom,* 348 N.W.2d 920, 924 (N.D.1984). While the term "alimony" may encompass several different award concepts, as we saw in *Rustand v. Rustand,* 379 N.W.2d 806, 807 (N.D.1986), making these payments terminable upon Loni's death indicates some form

of spousal support. *See Seablom, supra.* Considering the different consequences of each type of award, this amendment, converting payments for property settlement into spousal support, certainly changed substantive rights. *Coulter v. Coulter,* 328 N.W.2d 232, 239–241 (N.D.1982). This transformation was more than a "clarification"; it was a modification. *See Wright v. Wright,* 92 Wis.2d 246, 284 N.W.2d 894 (1979).

■ In moving to modify the decree, Bruce relied upon Rule 60(b)(i), N.D.R. Civ.P., which permits reopening of a judgment for "mistake, inadvertence, surprise, or excusable neglect," upon timely motion. When we review a Rule 60(b) order, we consider whether the trial court abused its discretion. *Watne, supra.* While "discretion should incline towards granting" relief under Rule 60(b) when no injustice will ensue, *National Farmers Union Property & Casualty Co. v. Schmidt,* 219 N.W.2d 111, 114 (N.D.1974), relief should be granted only upon a showing of excusable circumstances. A party cannot reopen a judgment merely because he is unhappy with it; he must show justification for the mistake or inadvertence. Ignorance of the law is not normally enough. 11 Wright and Miller, *Federal Practice and Procedure* § 2858, at p. 170 (1973); *Hoffman v. Celebrezze,* 405 F.2d 833, 835 (8th Cir. 1969). Moreover, when, as in this case, a judgment is based on a contract, the moving party has the added burden of justifying, under contract law, change of the contract. *Fleck v. Fleck,* 337 N.W.2d 786, 790 (N.D.1983).

The reason given by Bruce for his motion is that his tax preparer later questioned language in the divorce decree. According to Bruce, his tax consultant "was worried that the language 'property settlement' and 'no spousal support' would raise a red flag to an IRS agent regarding deductibility of payments...." Bruce asserts that amendment is necessary for his payments to be deductible for federal income tax purposes.[1]

---

1. The federal income tax laws about alimony and property transfers were substantially amended effective for judgments and other instruments executed after December 31, 1984. Pertinent parts of I.R.C. §§ 215 and 71 (1987), currently provide:

    "§ 215. *Alimony, etc., payments*

    "(a) *General rule.*—In the case of an individual, there shall be allowed as a deduction an amount equal to the alimony or separate maintenance payments paid during such individual's taxable year.

    "(b) *Alimony or separate maintenance payments defined.*—For purposes of this section, the term 'alimony or separate maintenance payment' means any alimony or separate maintenance payment (as defined in section 71(b)) which is includible in the gross income of the recipient under section 71."

    \*   \*   \*   \*   \*   \*

    "§ 71. *Alimony and separate maintenance payments*

    "(a) *General rule.*—Gross income includes amounts received as alimony or separate maintenance payments.

    "(b) *Alimony or separate maintenance payments defined.*—For purposes of this section—

    "(1) *In general.*—The term 'alimony or separate maintenance payment' means any payment in cash if—

    "(A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,

    "(B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215,

    "(C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and

    "(D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.

    "(2) *Divorce or separation instrument.*—The term 'divorce or separation instrument' means—

    "(A) A decree of divorce or separate maintenance or a written instrument incident to such a decree,

    "(B) a written separation agreement, or

    "(C) a decree (not described in subparagraph (A)) requiring a spouse to make payments for the support or maintenance of the other spouse."

    At the time the original divorce decree was entered in this case, I.R.C. § 71(b)(1) included the following phrase at the end of subparagraph (D): "(and the divorce or separation instrument states that there is no such liability)." This phrase was stricken from the statute in 1986. *See* Tax Reform Act of 1986, Pub.L.No. 99–514,

Assuming Bruce is correct, we point out that his claim is not based on any relevant change in the income tax law since this divorce decree. *See Watne, supra.* The fact that the current tax law was in effect when this divorce decree was agreed upon (*see* Footnote 1), suggests the possibility of mutual mistake. Elsewhere, courts have held that a mutual mistake about tax consequences does not merit relief from a property settlement agreement incorporated in a divorce decree. *See Kulchar v. Kulchar,* 1 Cal.3d 467, 82 Cal.Rptr. 489, 462 P.2d 17 (1969); *In re Marriage of Hall,* 681 P.2d 543 (Colo.Ct.App.1984); Annot., *Divorce and Separation: Mutual Mistake as to Tax Consequences as Ground for Relief Against Property Settlement,* 39 A.L.R.3d 1376 (1971); 24 Am.Jur.2d *Divorce and Separation* § 831 (1983).

 Parties to a divorce must necessarily consider tax consequences of divorce transactions. So also, a trial court, when it is properly informed, must take tax effects into account when it determines divorce transactions. *See Gorsuch v. Gorsuch,* 392 N.W.2d 392, 395 (N.D.1986). But, a trial court is not free to retroactively alter a stipulated decree to adjust tax impacts

§ 1843(b), 100 Stat. 2085, 2853 (1986). Regulations have not yet deleted the requirement that, in order to qualify as alimony or separate maintenance payments, the divorce or separation instrument state that the payor has no liability to continue to make any payment after the death of the payee. *See* Treas.Reg. § 1.71–1T (West 1987).

not adequately anticipated in the stipulation. *Coulter v. Coulter, supra.*

Bruce offered no evidence to excuse the claimed "mistake". *See Kulchar, supra.* Nor has he attempted to show that, under contract law, there is justification for setting the contract aside. *See Fleck, supra.* No hearing was held.

Although Bruce asserts that they agreed the payments were to be tax deductible by him, Loni and Bruce did not agree to any different arrangement if tax authorities treated the payments differently. Therefore, we conclude that the trial court abused its discretion in determining that Bruce presented grounds to amend the decree.

Accordingly, the amendment is reversed.

ERICKSTAD, C.J., and LEVINE, VANDE WALLE and GIERKE, JJ., concur.

For a recent decision by the U.S. Tax Court, holding comparable periodic payments over 16 years were for property rights and were not support payments deductible by the payor spouse, see *McCormick v. Commissioner of Internal Revenue,* 13 F.L.R. 1539 (USTC, No. 1987–418, 8/24/87).