**Maxine K. DICK, Plaintiff and Appellant,**

v.

**Keith W. DICK, Defendant and Appellee.**

**Civ. No. 11402.**

Supreme Court of North Dakota.

Oct. 20, 1987.

Serkland, Lundberg, Erickson, Marcil & McLean, Fargo, for plaintiff and appellant; argued by Ronald H. McLean.

Colin A. Bailey, Wahpeton, attorney of record until May 15, 1987, for defendant and appellee; argued by Craig E. Johnson, Fargo.

MESCHKE, Justice.

Maxine K. Dick appeals from support and property awarded to her in a judgment of divorce from Keith Dick. We affirm.

Keith and Maxine were married in 1969. There were no children.

At the time of their marriage, Keith, who has a high school education and one year of college, was employed as an automobile and farm equipment salesman and was engaged in a cow-calf operation. Keith began farming full-time in 1977. While farming, Keith was also a sales representative for Pioneer seed.

During the early years of the marriage, Maxine, who has a high school education, was employed outside the home as a clerical worker and as a clerk in a store. She was not employed outside the home during the last few years of the marriage until she started working as a clerk in a Fargo store after separation from Keith.

The judgment: (1) awards Keith assets, including property brought into the marriage or received by gift, valued at $638,100; (2) orders Keith to assume debts of $308,783.03; (3) awards Maxine assets valued at $13,483.50; (4) orders Maxine to assume debts of $14,341.56; (5) gives Keith "credit for property that he either brought into the marriage or received by gift during the marriage in the amount of $153,035"; (6) orders Keith to pay Maxine $85,165 on or before January 1, 1987, "to compensate for the differences in assets received and liabilities assumed by the parties"; and (7) provides that neither spouse shall receive alimony, but orders Keith to pay Maxine support of $1,000 per month for the last four months of 1986.

On appeal, Maxine asserts that the trial court erred in awarding spousal support for only four months, erred in valuing certain items of marital property, and erred in distributing the marital property.

We apply a limited scope of review to many of the issues raised in appeals from divorce judgments. The determination of the value of marital property is treated as a finding of fact. *Christensen v. Christensen*, 397 N.W.2d 456 (N.D.1986). A trial court's determinations on spousal support and property division are findings of fact, which will not be set aside on appeal unless clearly erroneous. *Branson v. Branson*, 411 N.W.2d 395 (N.D.1987). Findings of fact are presumptively correct. *Alumni Ass'n of Univ. v. Hart Agency, Inc.*, 283 N.W.2d 119 (N.D.1979). The complaining party bears the burden of demonstrating that findings are erroneous, and a finding is clearly erroneous only when the reviewing court is left with a definite and firm conviction that a mistake has been made. *Byron v. Gerring Industries, Inc.*, 328 N.W.2d 819 (N.D.1982). Simply because we might have viewed the evidence differently does not entitle us to reverse the trial court. *Jochim v. Jochim*, 306 N.W.2d 196 (N.D.1981). A choice between two permissible views of the weight of the evidence is not clearly erroneous. *Owan v. Kindel*, 347 N.W.2d 577 (N.D.1984).

## 1. Spousal Support

Maxine asserts that the trial court erred in limiting spousal support to four months. In May of 1985, by stipulation, Keith agreed to pay Maxine $1,000 per month as spousal support during the pendency of the action. The trial court continued the payments for four months after the divorce, until the time when Keith was to pay Maxine $85,165 for property division.

Keith and Maxine are nearly the same age with equivalent educations; they have no children; both "are able-bodied and in good health; [and] both are capable of providing income for themselves," as the trial court found. Maxine was employed outside the home during much of the marriage. Contrary to Maxine's assertion that "Keith was awarded all of the income-producing property of the parties," Maxine was awarded cash of $85,165, which is a substantial income-producing asset.

While continuation of a spouse's standard of living may be considered in determining whether or not spousal support is appropriate [*Bagan v. Bagan*, 382 N.W.2d 645 (N.D.1986) ], "in many cases, when the property is divided between the parties, it is not sufficient to maintain each of the parties at the same standard of living after the dissolution of the marriage as each enjoyed during the marriage." *Weir v. Weir*, 374 N.W.2d 858, 864 (N.D.1985). Maxine has not demonstrated to us that she was substantially disadvantaged by the divorce and needs support for rehabilitation. Although Maxine expressed a desire for further education, the trial court found that her interest was "either unrealistic or not genuine." Maxine testified that being a court reporter "would be very interesting to do" and also testified that she would "like to go to enough schooling so that I can learn something about securities and get a little business background." Maxine did not apply to any school or inquire about the costs of attending school. Upon review of the entire evidence, we have not been left with a definite and firm conviction that a mistake has been made in not awarding spousal support beyond four months.

## 2. Property Valuations

Maxine contends that the trial court erred in valuing assets and liabilities.

■ The trial court found that Keith's Pioneer seed business had no value. The business had no tangible assets other than a customer list, which was equally available to Keith and to Pioneer. While it may sometimes be error not to value a service enterprise, such as the sole business of a spouse, we are not persuaded that the trial court erred in assigning no value to this part-time personal service.

■ The trial court valued growing crops and government farm program payments at $25,000. Maxine contends that the value should have been $73,307.83. Maxine's value, however, ignores $31,000 that Keith owed for cash rent for 1986. Keith's accountant testified that the 1986 crop would result in a loss of $37,000 to $57,000. The trial court's valuation was within the range of the evidence and is not clearly erroneous.

■ Maxine contends that a money market account valued at $5,000 by the trial court should have been valued at $8,750. In a pretrial property and debt listing submitted pursuant to Rule 8.3, NDROC, both spouses valued the account at $5,000. At trial, Maxine testified that the account had a value of $5,000. Keith, however, testified that the balance in the account was "approximately $8,500.00, $9,000.00 as of the end of May" and that an additional $609 had since been deposited. It is clear that the trial court erred in valuing the account at $5,000. But, it was a relatively small error in valuing assets totalling over six hundred thousand dollars. In view of Maxine's part in the error, we do not deem the error reversible.

■ Maxine asserts that the trial court erred in finding an income tax liability of $70,000. A licensed public accountant testified that, because of 1985 income deferred to 1986 and a 1986 sale of sunflowers, there was an income tax liability of $70,216 on income already received in 1986. He also testified that that figure was not exact and that if the farming operation were profitable in 1986, the tax would be higher. He further testified that until the tax is paid, "[i]t would have to be considered a permanent liability until it's taken care of." A tax liability reduces the net value of the marital property just like any other liability. We have said that a properly informed trial court must take tax effects into account when it determines divorce transactions. *Stoelting v. Stoelting*, 412 N.W.2d 861 (N.D.1987). While this tax liability may be decreased by a substantial operating loss, either payment of the tax or its decrease through substantial operating losses would reduce the spouses' net worth. We see no error in considering tax liabilities already incurred by divorcing spouses. This challenged finding is not clearly erroneous.

■ The trial court found that farm land purchased by the parties from Keith's parents had a fair market value of $192,000 when purchased in 1978. The parties purchased the land for $64,000 and the trial court found that the additional value of $128,000 was a gift to Keith from his parents. Maxine contends that the value of the land should have been limited to the $144,000 shown on gift tax returns filed by Keith's parents, so that the value of the gift was only $80,000. While the gift tax returns were some evidence of the land's value at the time, so was the testimony of Keith's mother that the land was worth $600 per acre in 1978 and Keith's testimony that at that time land in the area was selling for $600 per acre. The trial court's finding that the land was worth $192,000 ($600 per acre) in 1978 is supported by the evidence and is not clearly erroneous.

■ The trial court valued Keith's cow-calf operation at $34,750 at the time of the marriage. Maxine asserts that the value should have been $13,000, contending that "[t]he best evidence to determine the value of the cow-calf operation is the amount that Keith paid to purchase his partner's one-half interest in the operation." Keith purchased his partner's one-half interest in the cattle operation on November 29, 1968. At the time of their marriage on November 14, 1969, Keith testified he owned 50 to 55

purebred shorthorn cows, worth about $450 each, and two bulls. He could not recall whether he had any retained calves from the spring crop at that time, but testified that his practice was to hold calves over winter and sell them in the spring. Another witness testified that Keith had "probably 50 head of livestock, cows." He also could not remember if Keith had kept his calves or sold them. Keith was not certain whether or not he had any debt against the cattle at that time. Evidently, the trial court accepted Keith's testimony. The trial court's valuation is presumptively correct. The fact that Keith purchased a one-half interest a year before the marriage for $6,500 does not conclusively demonstrate that the cattle were only worth $13,000 at the time of the marriage. We are not persuaded that Maxine has overcome the presumption of correctness. The finding is, therefore, not clearly erroneous.

### 3. Property Distribution

■ Maxine argues that "even if this court determines that the trial court did not err in valuing the property, the trial court's judgment must be remanded because the distribution of property was inequitable.... because the court determined that Keith should be given 'credit' for property he brought into the marriage or received by gift during the marriage."

We said in *Anderson v. Anderson*, 390 N.W.2d 554, 555 (N.D.1986), that "[i]nherited property can be divided between spouses to make an equitable division of property between them." We found the property distribution in that case too disparate and awarded the former wife one-third of her former husband's inherited property. We do not, however, deem the facts in the *Anderson* case to be "remarkably similar to the facts of the Dick marriage," as asserted by Maxine. In the *Anderson* case, there was much less property to distribute; the wife had custody of three minor children; she was made responsible for retiring more debt than the husband, with much less income to do so; and she was found to be in need of rehabilitative spousal support. The facts are not similar.

Maxine also argues that excluding the value of the property received by gift dur-

ing the marriage was "improper because the property was never gifted solely to Keith." Keith's mother, however, testified that the difference between the fair market value of the land and the purchase price was Keith's "inheritance." She also testified that it was not her intention to give a gift to Maxine at that time, but to use up all the gift tax exemptions that she could.

Maxine argues that it was clearly erroneous to exclude the entire $128,000 "gift" in the discounted sale of the land when the court found the land's present value to be only $120,000. The trial court gave Keith "credit" in the amount of $153,035 for property he either brought into the marriage or received by gift during the marriage. In findings that have not been challenged or that we have found not clearly erroneous, the trial court found that Keith brought into the marriage or acquired by gift during the marriage property worth $201,070. Therefore, the trial court did not specifically give Keith credit for the full $128,000 gift and the total amount of the credit is $48,035 less than Keith brought into the marriage or acquired by gift.

"[W]hat is an equitable distribution will depend on the facts and circumstances of each case." *Halla v. Halla*, 200 N.W.2d 271, 275 (N.D.1972). From our review of the record, we deem the trial court's property distribution "fair to all concerned." *Anderson v. Anderson, supra*, 390 N.W.2d at 555. After liabilities, and excluding the value of property Keith brought into the marriage or acquired by gift during the marriage, the net value of marital property was somewhat more than $170,000. Maxine was awarded nearly one-half in cash. Arithmetical exactness is not required. The property distribution is not clearly erroneous.

The judgment is affirmed.

ERICKSTAD, C.J., and GIERKE and VANDE WALLE, JJ., concur.

LEVINE, Justice, concurring and dissenting.

I believe the issue of spousal support gets undeserved short shrift and therefore I dissent.

Throughout this seventeen-year marriage, Maxine's periodic employment outside the home was clearly of secondary importance. She worked outside the home in order to contribute to the family enterprise and not to enhance, expand or even engage in an independent or self-fulfilling career. I disagree with the majority's assessment that Maxine was not "substantially disadvantaged by the divorce." When a homemaker concentrates on a homemaking career, she is necessarily disadvantaged by that choice when the marriage dissolves.

Maxine presently earns minimum wages as a sales clerk. She is unskilled in any occupation or profession. Her interest in educating herself either as a court reporter or as a business person seems appropriate and realistic. She anticipates it will take her two years to achieve the necessary training. I cannot see what is indefinite about this. Nor can I understand how the trial court so cavalierly concludes that Maxine is not interested in educating herself. It is indeed curious that a court would conclude that a minimum wage earner who thinks about her future would not be interested in improving her earning capacity.

It is one thing to provide a second income from a minimum wage job. It is quite another to be left a sole earner of minimum wages. Maxine testified that she wanted to go to school to do something she "could be proud of and feel good" about. She enjoyed being home and cooking, cleaning, laundering, grocery shopping, mowing the lawn, keeping the family books, paying the bills and helping with chores. That life is no longer possible. It is a mistake to deprive her of a crack at improving her life. I would reverse and remand for the trial court to determine a reasonable amount of spousal support for a reasonable duration.