Marvin L. KAISER, Plaintiff and Appellee,

v.

Lillian KAISER, a/k/a Lillian Walters Kaiser, Defendant and Appellant.

Civ. No. 900276.

Supreme Court of North Dakota.

July 31, 1991.

Serkland, Lundberg, Erickson, Marcil & McLean, Ltd., Fargo, for plaintiff and appellee; argued by Ronald H. McLean. Appearance by Maureen Holman.

Thomas F. Topel (argued) of Dorsey & Whitney, Billings, Mont., Freed, Dynes, Reichert, Buresh & Herauf, PC, Dickinson, for defendant and appellant; argued by Ronald A. Reichert.

ERICKSTAD, Chief Justice.

Lillian Walters Kaiser appealed from a district court order denying her motion for a new trial in the parties' divorce action. We affirm in part, reverse in part, and remand for further proceedings.

Lillian and Marvin Kaiser were married in 1972. At the time of their marriage, Lillian had a daughter, Shannon, from a previous marriage. A daughter, Susan, was born of the marriage in 1974. The parties were divorced on December 30, 1987. The issues of property distribution, child custody, spousal support and child support were tried in 1988. Among other things, the judgment entered: (1) awarded Lillian the primary care, custody, and control of Susan; (2) required Marvin to pay child support of $750 per month for Susan and to provide an appropriate major medical health insurance policy for Susan; (3) awarded Marvin assets that the court valued at $1,268,849.96 and imposed upon him liabilities of $395,500, for a net award of $873,349.96; (4) awarded Lillian assets that the court valued at $1,243,137.41 and imposed upon her liabilities of $60,000, for a net award of $1,183,137.41; and (5) required Marvin to pay Lillian spousal support of $250 per month for 24 months.

Judgment was entered November 21, 1989, and notice of entry was given December 7, 1989. Lillian did not take an appeal from the judgment. Instead, on February 9, 1990, Lillian filed a motion for a new trial pursuant to Rule 59(b)(1), (3), (4), (6) and (7), N.D.R.Civ.P.[1] The trial court denied the motion and Lillian appealed, contending that the trial court erred in denying a new trial because: (1) the trial court overvalued her interest in Imperial Oil of North Dakota, Inc., (Imperial) which the court valued at $600,000 and awarded to her; (2) the amounts awarded for child and spousal support are inadequate; (3) the trial court undervalued Sun Well Service, Inc., which it awarded to Marvin, by accepting Marvin's liquidation value of $167,000, reached by valuing its assets and subtracting auction expenses and corporate and personal taxes asserted to be due upon liquidation; and (4) the trial court undervalued Marvin's retirement accounts, law practice, and buckskins by reducing their values by possible tax liabilities.

We will not disturb a trial court's ruling on a motion for a new trial unless there is an affirmative showing of a manifest abuse of discretion. *Kraft v. Kraft*, 366 N.W.2d 450 (N.D.1985); *Olson v. A.W. Chesterton Co.*, 256 N.W.2d 530 (N.D.1977). "A trial court abuses its discretion when it acts arbitrarily, capriciously, or unreasonably." *Smith v. Anderson*, 451 N.W.2d 108, 112 (N.D.1990). "Ordinarily, events occurring subsequent to trial are not grounds to justify a new trial under Rule 59(b), NDRCivP." *Hoge v. Hoge*, 281 N.W.2d 557, 560 (N.D.1979). A trial court's determinations with regard to matters of property division, spousal support, and child support are findings of fact subject to the clearly erroneous standard of Rule 52(a), N.D.R.Civ.P.[2] *Kraft v. Kraft*, *supra*. A trial court's valuation of marital property is treated as a finding of fact. *Dick v. Dick*, 414 N.W.2d 288 (N.D.1987).

The trial court valued Lillian Kaiser's shares of Imperial Oil of North Dakota, Inc., at $600,000. Lillian argues:

"The trial court did not indicate how it arrived at this figure. Presumably, it accepted Marvin's calculations concerning the value of Imperial Oil at $8.5 million and of Lillian's shares of Imperial Oil at $957,000 (App. 32), and reduced that figure by approximately forty percent because her 'share is a minority interest and there is no ready market for sale of the stock.' (App. 30)."

Lillian contends that the trial court erred in accepting Marvin Kaiser's valuations of Imperial's nonproducing minerals and nonproducing leases, rather than accepting the

---

1. *Rule 59. NEW TRIALS—AMENDMENT OF JUDGMENTS*

   *    *    *    *    *    *

   *(b) Causes for New Trial.* The former verdict or other decision may be vacated and a new trial granted on the application of a party aggrieved for any of the following causes materially affecting the substantial rights of the party:

   "1. Irregularity in the proceedings of the court, jury, or adverse party, or any order of the court or abuse of discretion by which either party was prevented from having a fair trial;

   *    *    *    *    *    *

   "3. Accident or surprise which ordinary prudence could not have guarded against;

   "4. Newly discovered evidence material to the party making the application, which he could not with reasonable diligence have discovered and produced at the trial;

   *    *    *    *    *    *

   "6. Insufficiency of the evidence to justify the verdict or other decision, or that it is against law;

   "7. Errors in law occurring at the trial and, when required, excepted to by the party making the application; ..."

2. We recognize that the clearly erroneous rule does not apply in this instance because there is no appeal from the judgment, but only from the order denying a motion for a new trial. A refusal to grant a new trial to correct a judgment based upon clearly erroneous findings of fact may, however, be an abuse of discretion. On the other hand, we have observed that the fact that a trial court may have made a mistake in the law when entering a judgment does not necessarily justify setting the judgment aside under a Rule 60(b), N.D.R.Civ.P., proceeding. *See First Nat'l Bank of Crosby v. Bjorgen*, 389 N.W.2d 789 (N.D.1986).

valuations of her expert witness or another expert's valuation of Lillian's shares of Imperial stock.

Marvin valued Imperial's mineral and leasehold interests at $7,104,245 and valued all of Imperial's assets at $8,561,855.84. Marvin valued Imperial's nonproducing mineral interests by using a lease value of $500 per acre, multiplied by three, multiplied by the total acres. He testified that it was reasonable to use a lease value of $500 because:

> "It's Imperial's policy that they lease for a thousand dollars an acre if you want to acquire a lease from Imperial. I thought that even though that is a policy of the company, that in reviewing the records over the past years as disclosed in the tax returns, there was substantial evidence that what they did lease for was in the vicinity of $500. I saw a number 450 and saw a transaction higher. I know from experiences together with them that we leased at 500 and some at a thousand, so I thought conservatively between what I knew and the tax returns revealed and the location of their minerals, I thought a conservative approach would be to use $500 an acre rather than the thousand that I'm familiar with."

Marvin also valued Imperial's nonproducing leaseholds at $500 per acre, on the following, somewhat confusing, basis:

> "Imperial doesn't buy leases to broker them. They buy leases as a matter of development generally, when buying minerals or unleased minerals at least is not available to them. With that in mind, I know that they valued the leases—if they were going to grant a lease at $500 an acre, so I made a reasonable assumption that they would value the acquisition of leases if they were buying

them for their own development portfolio at $500 an acre."

Marvin valued some of his own interests at what he paid for them—$150 per acre and $17.50 per acre (other interests he did not value at all, but suggested that they be divided equally).

John Broschat, on behalf of Lillian, valued Imperial's mineral and leasehold interests (which Marvin had valued at $7,104,-245) at a fair market value of $1,147,000, considering what could be obtained for nonproducing interests and leaseholds on the market with their proved and estimated reserves, and pricing parameters currently used in the Williston Basin. He valued producing interests using current production rates, estimated monthly cash flow, historical falloff rates, and estimated remaining economic life.

Harry Ness, on behalf of Lillian, testified that he valued Lillian's 9.7 percent interest in Imperial at $135,000, using a combined price/earnings approach and an indicated value approach.

Lillian contends that Marvin used 1986 production and 1986 prices in valuing Imperial's working interests and producing mineral interests, while he "used *1988* production figures and *1988* prices when he calculated the value of his income producing properties and leases." Lillian argues: "In order to be consistent, it is necessary to value the parties' producing properties using production from the same year." After the trial, Lillian sold her shares in Imperial for $100,000. At trial, Marvin testified that he used 1986 income in valuing Imperial's working interests and producing mineral interests because 1986 was "the last year that I had numbers and verification for" and that "It's the last year that discovery provided us—the information that you could relate it to, the properties—to have any judgment on the validity." [3]

---

**3.** Marvin had some difficulty securing information from Imperial Oil of North Dakota, Inc., a closely-held corporation owned by Lillian's family, as reflected in the following excerpt from a trial court order of July 15, 1988:

> "While the Court appreciates the vigor and sincerity with which Imperial Oil has resisted its obligation to respond to the pending discovery proceedings, the Court notes that Im-

perial Oil's protests have been considered and rejected by this Court on at least three occasions and submitted to and rejected by the Supreme Court of North Dakota on two submissions. This Court now expects Imperial to respond promptly, forthrightly, candidly and completely to the discovery requests and it is cautioned that its failure to do so within 20

In denying the motion for a new trial, the trial court stated:

"Well, this was a troublesome issue. The valuation of the assets, generally, that was a very difficult issue at trial. It was hotly disputed as to what the values of the various items of property should be, and I found that a very difficult task to come to some resolution of those issues. As to the subsequent sale of Lillian's shares of stock in Imperial Oil, I'm quite frankly not impressed by the fact that she sold them to her mother later on for apparently about one-sixth of the valuation that I placed on those assets. Sale to one's mother of stock in a family corporation is not indicative of a truly armslength [sic] transaction.

\*    \*    \*    \*    \*    \*

"I realize here there are some good arguments made on both sides, but I don't see that there's anything presented here that would constitute grounds for a new trial. If I made some mistakes, I'd like to correct them, but I'm not sure these are mistakes here. They were just difficult judgment calls, and if they were bad enough to be corrected on appeal, they should have been corrected on appeal, not a new trial being considered and granted now in a case of this nature, much more than one year after the trial was completed and the decision was made. So as to the asset evaluation generally, I deny the motion for a new trial."

■ In our view of the evidence, there is no explanation for why Marvin valued Imperial's nonproducing mineral and leasehold interests by using a base of $500 per acre when he used bases of $150 per acre and $17.50 per acre in valuing his own nonproducing minerals; Imperial's isolated sales of two parcels for "in the vicinity of $500" per acre is an insufficient foundation for Marvin's use of $500 per acre as a base in valuing all of Imperial's remaining nonproducing minerals and leaseholds; the disparities between Marvin's valuation of Imperial's assets and those of Lillian's experts amounts to several million dollars, resulting in a huge difference in the valuation

assigned to Lillian's interest in Imperial, which is one of the largest items in the parties' marital estate. The astounding differences in the valuation of the assets of Imperial are so great that we are forced to conclude that the trial court erred in uncritically accepting, carte blanche, the valuations testified to by Marvin. We further conclude that the trial court manifestly abused its discretion in denying Lillian's motion for a new trial with regard to the valuation of her interest in Imperial.

The trial court required Marvin to pay child support of $750 per month and to provide an appropriate major medical health insurance policy for Susan. The trial court required Marvin to pay spousal support of $250 per month for two years. Lillian moved for a new trial on the ground that those amounts are inadequate.

■ A trial court's determination with regard to child support is a finding of fact subject to the clearly erroneous standard of Rule 52(a), N.D.R.Civ.P. *Kraft v. Kraft, supra.* "The objective of the trial court in setting child support must be to strike a balance between the needs of the children and the ability of the non-custodial parent to pay." *Heggen v. Heggen,* 452 N.W.2d 96, 102 (N.D.1990). The trial court awarded Marvin property with a net valuation of $873,349.96 and awarded Lillian property with a net valuation of $1,183,137.41. The trial court found that Lillian would receive an income of nearly $5,000 per month from her oil producing properties, and that she would "likely receive sporadic but substantial income" from other sources. The trial court also found:

"24. As a result of the division of property in this case, Marvin will have very substantial debt to service. Lillian will have the financial capacity to contribute substantially to the support of Susie. Therefore, the child support guidelines should not be applied in this case. The sum of $750.00 per month is an appropriate and fair share for Marvin's contribution to the support of Susie."

days of the date of this Order may result in

the imposition of severe sanctions."

Lillian's affidavit in support of her motion for new trial on the ground of inadequate child support details total living expenses very nearly the same as she estimated at trial. While Lillian characterized child support of $750 per month as "absolutely puny" at the hearing on the motion for a new trial, "[t]he trial court apparently determined that [Susan's] needs would be met by the sum it awarded as child support." *Heggen v. Heggen, supra,* 452 N.W.2d at 102. In light of the evidence before the trial court at trial and on the motion for new trial, and the court's findings of fact, we will not substitute our judgment for that of the trial court. We conclude that the trial court did not manifestly abuse its discretion in denying the motion for a new trial on the ground that the child support awarded was insufficient.

■ We are similarly unpersuaded that the trial court manifestly abused its discretion in denying Lillian's motion for a new trial on the ground of insufficiency of the spousal support awarded to her. Lillian "has not demonstrated to us that she was substantially disadvantaged by the divorce and needs support for rehabilitation." *Dick v. Dick, supra,* 414 N.W.2d at 290. When property is divided in a divorce, it is often insufficient to maintain each of the parties at the same standard of living as they enjoyed during the marriage. *Weir v. Weir,* 374 N.W.2d 858 (N.D.1985).

Lillian contends that the trial court undervalued Sun Well Service, Inc., by accepting Marvin's liquidation value of $167,000, reached by valuing its assets at their liquidation value and subtracting auction expenses and potential corporate and personal income taxes asserted to be due upon liquidation. Lillian also contends that the trial court undervalued Marvin's retirement accounts, law practice, and buckskins by reducing their values by possible tax liabilities.

■ The trial court valued Sun Well Service, Inc., on the basis of the liquidation value of its assets. Lillian contends that the court should have valued the company as a going business. "Ordinarily, fair market value, not 'liquidation value,' is the proper method of valuing property in a divorce." *Heggen v. Heggen, supra,* 452 N.W.2d at 99.

Marvin testified that Sun Well Service, Inc., "has no value as a going business", that it has no "recent history of profitability", that its future looks "bleak", and that "the highest value of the company would be an analysis of the liquidation of the assets." Gregory Cleveland, a certified public accountant testifying on behalf of Marvin, testified that Sun Well Service, Inc., "can't be sold as a going business"; that "[f]rom looking at the previous service for three years, the corporation has minimal cash flows, has no long-term contracts. It's paid no shares to stockholders. It's paid no dividends. And there's no probable expectation it ever will. I can't see any reason why anyone would want to buy the business on a going business basis." Cleveland testified that the 1986 Tax Reform Act makes it "extremely improbable that anyone's going to buy the stock of Sun Well Service, because, to do so, they're going to buy substantial assets with no depreciation and incur substantial tax liability." He further testified that, in his opinion, "the stock of Sun Well Service, Inc., has no value. The whole value of the corporation lies in the value of the underlying assets." He also testified that, upon liquidation, a "tax liability is going to be incurred basically because of tax benefits in prior years that were obtained through depreciation." Although Lillian contends that potential taxes should not have been deducted in valuing Sun Well Service, Inc., which we will address later in this opinion, Lillian has not refuted Cleveland's analysis of the effect of the 1986 Tax Reform Act on the marketability of the shares of stock in the company as a going business and valuation of the corporation based on the liquidation value of its assets.

On the other hand, on September 22, 1988, five weeks before Marvin's trial testimony, Sun Well was awarded a Bureau of Land Management contract in the amount of $466,000, of which, Marvin stated in his affidavit in opposition to Lillian's motion for a new trial: "The bid schedule antici-

pated that approximately 85% of the contract price would be paid to third parties." In addition, Marvin testified that he would "like to retain it now that I've put the years in to keep it alive"; that he had no present intention of liquidating it, but "[u]ltimately, I no doubt will be"; that he wanted to keep it; and that he "wouldn't prefer that the Court order a liquidation" of Sun Well Service, Inc.

In light of the foregoing testimony, we are not persuaded that the trial court erred in valuing Sun Well Service, Inc., on the basis of the liquidation value of its assets. We conclude, however, that since Sun Well Service, Inc., was not going to be liquidated, it should not have been valued by subtracting auction expenses that would only be incurred if its assets were liquidated.

Lillian contends that theoretical tax liabilities should not have been deducted in valuing Sun Well Service, Inc., or in valuing Marvin's retirement accounts, law practice, and buckskins. Except as to Marvin's law practice and buckskins, we agree.

■■■ "[A] properly informed trial court must take tax effects into account when it determines divorce transactions." *Dick v. Dick, supra,* 414 N.W.2d at 291. "We see no error in considering tax liabilities already incurred by divorcing spouses." *Id.,* at 291. A trial court should amend its property distribution if it concludes that an adverse tax consequence would result, which could be avoided by a different equitable allocation of property. *Gronneberg v. Gronneberg,* 412 N.W.2d 84 (N.D.1987). However, we agree with the decision in *Brockman v. Brockman,* 373 N.W.2d 664, 666 (Minn.App.1985), holding that the trial court improperly considered the income tax consequences of a future withdrawal of funds from a pension plan when there were no current plans to withdraw funds:

> "[A] tax consequence should be considered only where the recognition of tax liability is required by the dissolution or is certain to occur within a short time thereafter.... Consideration of a tax consequence is precluded where to do so requires the trial court to speculate as to

the party's future dealing with the property." (Citations omitted.)

*See also Gilbert v. Gilbert,* 192 Mont. 444, 628 P.2d 1088, 1089 (1981): "The District Court therefore did not abuse its discretion by refusing to consider the theoretical income tax consequences of a present liquidation [of retirement fund assets] which is neither necessary nor probable, but merely conjectural." The Pennsylvania Supreme Court has explained why income tax consequences should be considered when making a property distribution upon divorce only when a taxable event results or is certain to occur shortly:

> "... If a taxable event such as a sale or other transfer of property is required by the award of equitable distribution, or is certain to occur shortly thereafter, the tax liability of the parties can be reasonably ascertainable. However, where there is merely a likelihood or possibility that a taxable event will occur, the court is left to speculate as to the tax consequences.
>
> "... [A] present deduction from the value of a marital asset for future tax liability that cannot reasonably be calculated and, in fact, may never be imposed could result in a windfall to Mr. Hovis and a corresponding disadvantage to Mrs. Hovis.
>
> "... In order to insure a 'fair and just determination and settlement of property rights' we favor predictability over mere surmise in the valuation and distribution of marital property after divorce. Accordingly, we hold that potential tax liability may be considered in valuing marital assets only where a taxable event has occurred as a result of the divorce or equitable distribution of property or is certain to occur within a time frame such that the tax liability can be reasonably predicted."

*Hovis v. Hovis,* 518 Pa. 137, 541 A.2d 1378, 1380–81 (1988). We agree with the foregoing decisions holding that a trial court in a divorce action should consider potential taxes in valuing marital assets only if (1) the recognition of a tax liability is required by the dissolution or will occur within a

short time; (2) the court need not speculate about a party's future dealing with the asset; (3) the court need not speculate about possible future tax consequences; and (4) the tax liability can be reasonably predicted. In accordance with decisions such as *Brockman, Gilbert,* and *Hovis,* those considerations preclude deducting theoretical tax liabilities in valuing Sun Well Service, Inc., and Marvin's retirement accounts. Thus, the trial court's valuation of those marital assets after deducting theoretical tax liabilities was an error in law occurring at the trial under Rule 59(b)(7), N.D.R.Civ.P., and the trial court manifestly abused its discretion in denying Lillian's motion for a new trial in these respects.

■ With regard to the valuation of Marvin's law practice and buckskins, the trial court did not abuse its discretion. The valuation of Marvin's law practice was based on income received in 1988 ($54,000), subtracting 1987 income received in 1988 ($14,000), and adding accounts receivable of $14,000. All of this was as of the time of Marvin's testimony on October 31, 1988. It was all taxable income, tax would be due relatively soon and could be reasonably predicted. Therefore, the trial court did not abuse its discretion in denying a new trial on the matter of deducting taxes in valuing Marvin's law practice.

■ We also find no abuse of discretion with regard to the valuation of Marvin's buckskins. They were not valued after deducting a potential tax that might be due upon their sale. Marvin testified that he paid $10,000 for the buckskins, "they also qualify as a tax deductible item and so the cost to the marital estate was half of the purchase price, and, also, they are not— unless you find someone of my size and shape and interest, there is a very limited market for these items." Lillian valued the buckskins at $10,000. She testified that they cost $10,000, are museum quality pieces that will appreciate in value, and probably should be valued at more than $10,000. "A choice between two permissible views of the weight of the evidence is not clearly erroneous" (*Dick v. Dick, supra,* 414 N.W.2d at 290), and the trial court

did not abuse its discretion in denying Lillian's motion for a new trial on this ground.

We conclude that the trial court did not manifestly abuse its discretion in denying Lillian's motion for a new trial on the grounds she asserted with regard to spousal support; child support; the trial court's valuation of Sun Well Service, Inc., on the basis of its liquidation value rather than as a going business; the valuation of Marvin's law practice; and the valuation of Marvin's buckskins. To that extent, the order denying Lillian's motion for a new trial is affirmed.

We conclude that the trial court erred in valuing Lillian's interest in Imperial by accepting Marvin's valuations of Imperial's assets; that Sun Well Service, Inc., should not have been valued by deducting auction expenses; and that theoretical tax liabilities should not have been deducted in valuing Sun Well Service, Inc., and Marvin's retirement accounts. We further conclude that the trial court manifestly abused its discretion in denying Lillian's motion for a new trial with respect to those matters. With regard to those matters, the order denying Lillian's motion for a new trial is reversed.

Because the trial court's property distribution is based upon erroneous valuations of substantial assets, we "remand to allow the trial court an opportunity to redetermine the matter of an equitable distribution in light of a correct valuation of the parties' property." *Lippert v. Lippert,* 353 N.W.2d 333, 337 (N.D.1984). *Lippert* was a case in which we were able to determine the correct property valuation and remanded for redetermination of an equitable distribution in light of that valuation. Here, we must remand for both a revaluation of some of the parties' property and a redetermination of an equitable distribution of the parties' property. An equitable distribution fashioned after further proceedings on remand will account for disparities in the income-producing capacities of the parties and the property distributed. *Sanford v. Sanford,* 301 N.W.2d 118 (N.D.1980).

The order denying Lillian's motion for a new trial is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion to allow the trial court to properly value Sun Well Service, Inc., Marvin's retirement accounts, and Lillian's interest in Imperial Oil of North Dakota, Inc., and to redetermine an equitable distribution of the parties' marital property.

ERICKSTAD, C.J., and MESCHKE, J., concur.

LEVINE and VANDE WALLE, JJ., concur in the result.

PEDERSON, Surrogate Judge, sitting in place of GIERKE, J., disqualified.

PEDERSON, Surrogate Judge, dissenting.

This case was tried to the court without a jury. There was no appeal taken from the judgment. The appeal was taken from the order of the trial court which declined to grant a motion for a new trial. The majority opinion appears to reexamine the evidence in the manner of an appellate trial de novo or as authorized and limited by Rule 52(a) NDRCivP when findings of fact are challenged. I am left with the impression that an appeal from the denial of a motion for new trial can now be used as a substitute for a timely appeal from the judgment.

I plainly do not agree that there has been a showing in this case of "manifest abuse" of trial court discretion. There was nothing "unreasonable, arbitrary, or unconscionable" about the denial of the motion. See *Kraft v. Kraft*, 366 N.W.2d 450, 453 (N.D.1985); *Kerzmann v. Rohweder*, 321 N.W.2d 84, 87 (N.D.1982); *Hoge v. Hoge*, 281 N.W.2d 557, 560 (N.D.1979); *Porter v. Porter*, 274 N.W.2d 235, 243 (N.D.1979). I would affirm the order denying the motion.