**Patricia Ellen HEGGEN, Plaintiff, Appellee and Cross–Appellant,**

**v.**

**John Peter HEGGEN, Defendant, Appellant and Cross– Appellee.**

**Civ. No. 910196.**

Supreme Court of North Dakota.

Aug. 19, 1992.

Robert W. Harms (argued), of Harms Law Offices, Ltd., Williston, for plaintiff, appellee, and cross-appellant.

Dennis Edward Johnson (argued), of Johnson Law Office, Watford City, for defendant, appellant, and cross-appellee. Appearance by John Peter Heggen, appellant.

MESCHKE, Justice.

John Heggen appealed and Patricia Heggen cross-appealed[1] from an amended divorce decree. We reverse and remand for reconsideration of the method of implementing the property division.

The trial court initially (1) granted a divorce; (2) determined child custody; (3) ordered John to pay child support of $240 per month per child for the couple's two youngest children; (4) awarded Patricia spousal support of $600 per month; (5) distributed marital property to John that the court calculated had a net value of $79,081; and (6) distributed marital proper-

ty to Patricia that the court calculated had a net value of $64,682. On appeal, we affirmed the custody and child support awards, reversed the property division, and remanded for a recalculation and redistribution of the marital estate. *Heggen v. Heggen*, 452 N.W.2d 96 (N.D.1990) (*Heggen I.*). We directed the trial court to revalue three marital assets: Heggen Equipment real estate, Heggen Equipment, Inc., and a Heggen Equipment, Inc. debt to John of $40,-000.

The trial court initially valued the Heggen Equipment real estate at $40,000 in accordance with evidence that focused on coerced sales and the property's liquidation value. We remanded for revaluation in accordance with fair market value. *Heggen I*, 452 N.W.2d at 99–100. We held that the trial court's finding of a negative $55,-108 as the value of Heggen Equipment, Inc. was clearly erroneous. *Id.* at 100. We also instructed the trial court to determine the value of a Heggen Equipment, Inc. debt to John, an item omitted in the first distribution. *Id.* at 100.

On remand, the trial court: (1) valued the Heggen Equipment real estate at $200,000; (2) found that Heggen Equipment, Inc. had a net value of $242,000; (3) increased John's assets by $40,000 owed him by Heggen Equipment, Inc.; (4) found that the assets awarded to John had a net value of $483,129, while the assets awarded to Patricia had a net value of $64,100; and (5) directed John to pay Patricia $200,000 to redress the disparity in value of assets awarded. At first, the court directed that the $200,000 be secured by a mortgage on the real estate interests of John and Heggen Equipment Inc., with payments to be amortized over ten years at six percent interest. After post-trial motions, and without explanation, the trial court entered an amended decree that abandoned the deferred payment formula and, instead,

---

**1.** Patricia does not raise any specific questions in her cross-appeal. She expresses a desire for a different judgment in only a perfunctory fashion. After arguing that the trial court's award to her of a $200,000 money judgment, instead of specific property, was not clearly erroneous, Patricia said in her brief that she would like "specific property awarded to her in partial sat-

isfaction of the $200,000 award made b[y] the trial court." In the conclusion of her brief, Patricia said: "The court's decision should be affirmed except to the extent that the trial court should award specific property to Pat in partial satisfaction of the $200,000 Judgment." We deem it unnecessary to address her cross-appeal.

awarded Patricia a money judgment against John for the $200,000 with interest at 12 percent per annum and otherwise left the initial decree in effect.

John contends on appeal[2] (1) that the trial court's valuations of the Heggen Equipment real estate, Heggen Equipment, Inc., and its $40,000 debt to John are clearly erroneous; (2) that liquidation value of the property awarded him, rather than its fair market value, is appropriate in light of the money judgment awarded Patricia; (3) that the trial court abused its discretion in strictly following our instructions in *Heggen I;* and (4) that the spousal support award should have been modified in light of John's inability to pay, Patricia's needs, and her $200,000 money judgment against John.

■ John contends that the trial court erred in valuing Heggen Equipment, Inc. at $242,000 and its $40,000 debt to him at face value. A trial court's valuation of marital property is treated as a finding of fact. *Dick v. Dick,* 414 N.W.2d 288 (N.D.1987). "Findings of fact are presumptively correct." *Branson v. Branson,* 411 N.W.2d 395, 396 (N.D.1987). There is evidence to support the trial court's valuations and those valuations are not clearly erroneous.

John's expert valued the Heggen Equipment real estate at $80,000 and Patricia's expert valued it at $200,000. The trial court believed Patricia's expert and valued the real estate at $200,000. Relying on *Kaiser v. Kaiser,* 474 N.W.2d 63 (N.D. 1991), John argues:

> Where there is great disparity between valuations of assets at trial, a conclusion can be reached that the trial court erred in uncritically accepting the valuations as testified to by one party over the valuations as testified to by another.

John's reliance on *Kaiser* is misplaced. In that case, the husband, using a base of $500 per acre, testified to the value of nonproducing minerals and leaseholds of Imperial Oil of North Dakota, Inc., a corporation partly owned by his former wife. Using bases of only $17.50 and $150 per acre, the husband also testified to the value of his own nonproducing minerals. There was no explanation for why he used the different bases. The trial court uncritically accepted the valuations presented by one spouse, who, without explanation, used two different bases in valuing nonproducing minerals so that his minerals were valued low and those of his wife (through her ownership of shares in Imperial) were valued high. No comparable situation is present in this case, and *Kaiser* is inapposite. There is evidence to support the trial court's valuation of this real estate, and the valuation is not clearly erroneous.

■ On remand, the trial court valued the various assets in the Heggens' marital estate at fair market value, as directed in *Heggen I.* The trial court then awarded most of the marital property to John and, to redress the disparity, awarded Patricia a money judgment against John for $200,000. While the division of values was no doubt appropriate, we conclude that the trial court's action in forcing immediate payment of the monetary award to Patricia was an abuse of discretion.

We recognized in *Heggen I,* 452 N.W.2d at 99, that, "Ordinarily, fair market value, not 'liquidation value,' is the proper method of valuing property in a divorce." We also recognized, however, that "liquidation value, rather than fair market value, may be appropriate under certain circumstances involving distressed conditions." *Id.* at 99. *See also Kaiser,* 474 N.W.2d at 68–69, where Chief Justice Erickstad wrote that valuing a corporation on the basis of its liquidation value might be appropriate where there was evidence that the corporation had no value as a going business and that the whole value of the corporation was in the liquidation value of its underlying assets.

In *Heggen I,* 452 N.W.2d at 99, there was "no evidence that the property in question was threatened by foreclosure or other market stress." Hence, use of liquidation values to design a value division was inap-

---

**2.** John's present appellate counsel did not represent John at trial and first appeared in this case on January 31, 1991, when he filed a number of motions on John's behalf.

propriate. The bulk of the Heggens' marital estate consists of the family home, farmland, Heggen Equipment, Inc., and Heggen Equipment real estate. The property is relatively illiquid, and it is heavily burdened by debt that the trial court apportioned to John. It is evident that John would have to liquidate much of the marital property awarded him when Patricia executes on her judgment or forecloses her judgment lien. Thus, the sale of much of the marital assets will take place in "circumstances involving distressed conditions" requiring John to accept a " 'depressed price' " under "coercive circumstances." *Heggen I*, 452 N.W.2d at 99. We wrote in *Pankow v. Pankow*, 371 N.W.2d 153, 157 (N.D.1985), that "courts should avoid a property distribution which will destroy or damage the ability of one of the parties to earn a livelihood or which will destroy the value of the property."

Because enforcement of the money judgment awarded here will greatly depress the value of the marital property, we conclude that the trial court abused its discretion. Valuing the Heggens' marital property at its fair market value and authorizing Patricia to promptly enforce a money judgment against John for her share will require the forced sale of property that is relatively illiquid and heavily burdened by debt. There are fairer alternatives.

■■■ In our view, the trial court should preferably have granted Patricia a monetary award, secured by all property (not just real estate), that John could pay in installments over a sufficient period of time (perhaps even longer than ten years) and on reasonable terms. Alternatively, if a liquidation of assets is to be ordered, then the court preferably should facilitate an equitable division of the property by allocating fair percentages of the net proceeds of the sale, rather than fixed values. Another option might combine these remedies, ordering the sale of some property with appropriate percentage division of the net proceeds between the spouses, and awarding certain property to one spouse with a deferred and secured monetary award to the other upon reasonable terms. Upon remand, the trial court is free to fashion an appropriate method of division that is fair to both spouses.

■■■ John contends that on remand the trial court abused its discretion because it "dealt strictly with those few items of property, debt and valuations that were found to be in error by the Supreme Court on the first ... appeal." Although the trial court could have considered other matters on remand if it deemed it necessary, it was not required to do so and John's argument is not persuasive.

John contends that the trial court should have modified the spousal support award in light of his inability to pay, Patricia's needs, and the court's award to her of a $200,000 money judgment against him. We have recognized that property distribution and spousal support are often intertwined and need to be considered together. *See Wahlberg v. Wahlberg*, 479 N.W.2d 143, 145 (N.D.1992) ("The trial court ... should make a support determination consonant with the property distribution"); *Pfliger v. Pfliger*, 461 N.W.2d 432, 436 (N.D.1990) ("[P]roperty division and spousal support often need to be examined and dealt with together.").

After the trial court's revision of the property distribution on remand, John further requested "a revision of the property settlement or modification of the spousal support-alimony requirements to be set in an amount reasonable in light of the Defendant's income earning potential and current ability." In an order denying this relief, the trial court commented:

— At time of divorce 12–88 John drawing approx $36,000 year from his corporation HEI (Heggen Equipment Inc.). He is still doing so.

— IRS return for HEI shows 1988 gross sales approx. 3.9 million. Likewise for 1989.

— IRS return for John personal shows 1988 gross approx. $66,000 and 1989 approx $61,000

— Since the divorce John has made improvements to his HEI building ... approx. $18,000 expended for that purpose in summer 1990.

— The financial information does not support any motion to reduce the ordered spousal support.

\* \* \* \* \* \*

—In summary, I discern no significant or substantial change in circumstances, nor other good cause or reason, such as to warrant the present defense motions (e.g. for amendments, for new trial, etc.) or such as to otherwise justify their approval in whole, or in part.

These explanations make it difficult to understand the reason that the court left spousal support unchanged.

█ If this decision was reached through analyzing both John's and Patricia's circumstances after an additional $200,000 in property values was set apart to each of them, the decision was undoubtedly within the trial court's discretion. If the decision was based upon the view that some change of circumstances since the divorce was necessary before the court could modify spousal support while reforming an initial marital distribution, the decision was erroneous. A change of circumstances is the standard for a later modification of spousal support, not for making it as part of an initial determination. *See,* for example, *Ramsdell v. Ramsdell,* 454 N.W.2d 522 (N.D. 1990). Since this was, in effect, an initial determination of spousal support, the trial court's use of a modification standard would be erroneous. *See Sateren v. Sateren,* 488 N.W.2d 631 (N.D.1992): "Our remand will permit the trial court to examine and resolve together the overlapping issues of the property division and spousal support." Because we remand for reconsideration of the method of implementing the property division, the trial court will have an opportunity to properly consider the spousal support award in light of the distribution of marital property that is finally made.

We reverse the property distribution. We remand to the trial court with instructions to distribute the marital property in light of this opinion and, if deemed desirable, to reconsider the spousal support award in light of the property distribution.

ERICKSTAD, C.J., and LEVINE and JOHNSON, JJ., concur.

VANDE WALLE, J., concurs in the result.